Carr, J.
The first point presented to and decided by the circuit court, was this simple and general proposition, Whether on die plea of non est factum, it be proper to submit to the jury, papers proved to .have been written by the *222 party whose hand-writing is in contest, that the jury, by a comparison of those papers with the instrument before it, may decide whether it be genuine or forged ? It was indeed attempted in the argument here, to found some reliance on the antiquity of the paper; but that wholly fails; for the paper bears date January 3d 1807, and the suit was brought in 1815: and the decisions on this point, go no farther tiran that where the antiquity of the writing makes it impossible for any living witness to swear that he ever saw the party write, comparison with-documents known to be in his handwriting has been admitted.
In the case of Redford v. Peggy, the general question, whether evidence by comparison of hands be admissible, was not directly before the court; yet the very nature of that case seemed to bring the point under review; and it will be found, that out of the four judges who sat, two expressly say that-such evidence is inadmissible, and the same conclusion may be fairly drawn from the opinion of a third. The writers on evidence, Peake, Phillips and Starkie, concur in saying, that though there has been formerly considerable diversity, it is now settled law, that evidence by comparison of hands is not admissible; and the cases they refer to, support (I think) the position. It may be remarked, that what is now meant by comparison of hands, is not exactly what was formerly meant. The case of Algernon Sydney, and that of the seven bishops, shew the- ancient meaning. By-comparison is now meant the juxtaposition of two or more writings before the- jury, that it may, from its own inspection and comparison of the paper in contest, with others admitted or proved to be genuine, decide the question. The cases collected by the writers before referred to, shew, that this is not permitted. There is also.a case (Eagleton v. Kingston, 8 Ves. 438.) in which lord Eldon discusses this question with much ability and learning. He says, “ When I first came into the profession, the rule as to hand-writing in Westminster hall, in all the courts, was this: You called a witness, and asked him whether he had ever seen the party *223 write. If he said he had, whether more or less frequently, if ever, that was enough to introduce the subsequent question, whether he believed the paper to be his hand-writing. If he answered, that he believed it to be so, that was evideuce to go to the jury. If he refused to answer to his belief, he was pressed, perhaps too much, to form a belief: but if he would not go the length of belief, his evidence went for nothing. Or you might ask a witness, who had not fsccn him write for a length of time, if you could not get a witness of a subsequent date. Yod might call one who had not seen him write for twenty years; and if he said he believed it was the writing of the person, that evidence might go to the jury; hut to he attested by all the rest of the evidence ; as it is the nature of all evidence to be more or less convincing”-—“ This rule was laid down with so much clearness, that till very lately, I never heard of evidence in Westminster hall, of comparison of hand-writing by those who had never seen the party write; though such evidence had been frequently received in the ecclesiastical court.” Lord .Eldon then reviews the cases on the question of the admissibility of comparison of hand-writing, as evidence before a jury, and concludes with saying, that “the later cases appear to have brought back the law to the state in which it stood twenty-five years beforenamely, that comparison of hands is not. evidence. His discussion of the rule seems to me very sensible and sound; and, I think, we had better suffer it to rest on the ground it now occupies, especially as it is said to work well in practice.
Then, as to the exclusion of the evidence of the remark of Richard Rowt, that his pen had not forgot to write: it is certain, the jury ought to have all the evidence which is relevant: of its weight it is to judge. But, when we are called on to reverse the decision of a judge, it is incumbent on the party seeking this, to shew that there is error; and to this end, lie ought to present to us such a case as shews the relevancy of the evidence rejected. I cannot see it here. The issue was, whether John Rowt had executed the deed, *224 which bears date in 1807. Twelve or thirteen years after this, in a conversation about the cause, Richard Rowt, (no party) says, “my pen has not forgot to write." There is no ground laid connecting this with the issue; no conversation stated, which led to or followed the remark; nothing to shew how it could possibly bear on the case. I cannot think, that so light and trivial and unconnected a remark should induce us to send back a case, where there have been two trials, in both of which the jury has found the same way.
Green, J. concurred.
Coalter, J.
As to the evidence offered by the appellant to prove, that after the last trial of this cause, Richard Rowt, in a conversation with the witness about it, said that his pen had not forgot to write; the rest of the conversation, if any was detailed, not being stated, so as to shew the relevancy or irrelevancy of that remark, I am unable to perceive why evidence of such a remark was offered, or indeed why it was objected to. .Richard Rowt may have said many things, which, according to circumstances, or other expressions, might be either relevant or irrelevant; and if the latter, surely the court would not be bound to hear all of his irrelevant conversations and declarations. Indeed, I am not clear, that conversations of his, tending to impugn his own character in this, or any other transaction, ought to be admitted, from the difficulty thrown thereby on the other party, to meet such particular matter, of which he could have no notice. But at present, it suffices to say, that no grounds are given, on which we can say, that the court erred in rejecting this evidence.
The other question, if it involved the whole doctrine of the proof of hand-writing, would be one concerning which the decisions, so far as I have examined diem, are not, I think, very consistent with the general rules of evidence, or with each other, or with the principles by which they pro- *225 less to be governed : nor, indeed, have I as yet been fully able to comprehend those principles.
The reason why a witness must see another write in order to form an opinion of the character of his hand-writing, is not, I apprehend, because seeing the party write gives you a knowledge of the character of his hand: he must see the hand-writing itself, after the act of writing is performed, in order to acquire that knowledge. But when he sees the manual operation himself, he knows that the hand-writing, which he at the same time or afterwards inspects, is the hand-writing of the party. He thus acquires a knowledge (more or less perfect, according to frequency and opportunity, and his skill in such matters) of a hand-writing, which he knows to be that of a certain individual; and having this knowledge within his mind, as he has of the human countenance, he compares with it a writing, alleged to be the act of the same individual but which he has not seen him write, in order to decide, whether it does or does not possess the samo characteristick marks. This kind of evidence was formerly called comparison of hand-writing, in as much aS it was, in fact, a comparison thus made in the mind of a witness, in contradistinction to his witnessing the manual operation itself.
But the character of a hand-writing, may be as well or even better known, by one who never saw another write, as by one who has. Cases of this kind occur in a course of a long correspondence, on business, between parties who never saw each other write. The perfect knowledge of hand-writing arises from frequently seeing the writing itself, not the manual operation, from which, without looking- at the writing itself, you can form no opinion. Being accustomed to see the operation, is only full evidence, that the writing which you have thus seen, and the character of which is more or less distinctly impressed on your mind, according to circumstances, is the character of the manual writing of that individual. In the course of business and correspondence, you acquire an equally perfect knowledge of the *226 hand-writing of the individual) you equally recognise it as an individual hand, which you can distinguish (as you can the human countenance) from any other hand, with as much certainty as you would the hand-writing of one you are accustomed to see write; and yet, if you should meet your correspondent in the street, you would not know him. But this writing may have been performed by the clerk of the person in whose name it is, and if so, you have no knowledge of the hand-writing of that person, though you have of that of his clerk : yet all the correspondence being in one hand, and it being usual for the party himself to carry it on, such witness has been admitted to prove the hand-writing to be his. This would be intirely defeated by proof that the letters were written by the clerk j and is weakened in proportion to any doubts that may exist, whether the party, whose hand-writing is to be proved, wrote the letters or not. As to the character of the hand itself, the proof is much stronger than that of a witness who has seen him write but seldom. The weight of all human testimony must depend on the credibility of the witness, and his opportunity of acquiring knowledge of the facts to which he deposes. Here, one witness has a better knowledge as to the character of the hand-writing; but whether it be the hand of him in whose name the writings are, he knows not; that is to be presumed or not, according to circumstances) and, so far, his evidence is weaker than that of him who has seen, though but in a few instances, the manual operation, from which he has derived a less perfect knowledge of the character of the hand. But, suppose the person who has received these letters, is not in being, or (like myself) is so bad a judge of the character of hand-writing, that he could hardly swear to his own, and this correspondence is placed in tire hands of one skilled in this art, who thus becomes acquainted with the character of the hand-writing, will he not be equally or more competent to decide, whether the writing in controversy is by tire same hand or not? And if he can thus acquire a knowledge of a hand-writing to-day, and may to *227 morrow, compare it in his mind with the hand-writing in controversy, may he not, when examined as a witness, first inspect the one, so as to possess himself of the character of the hand, and then the other, so as to compare it in his mind with the knowledge so acquired, and say whether he think it the same or not ? If he may, why may he not examine them together, by juxtaposition^ if knowledge of the character of the hand-writing, so as to be able to form an opinion, whelher certain writings are or are not written by the same hand that wrote the paper in controversy, may thus be acquired, perhaps with as much or more certainty than by distant comparisons in the mind; and if the legality or weight of the testimony depends on the knowledge oj' the witness; why may he not, in this way, qualify himself to depose, that the character of the hand-writing is or is not the same ? Whether the first was written by the person charged with writing the last, he may not know, any more than he who received the letters or other writings : unless that be satisfactorily established, his evidence of course goes for nothing. It frequently happens, that one piece of evidence is good for nothing unless something else is proved. Thus, in the case of Burr v. Harper, 1 Holt’s Ni. Pri. Rep. 420. 3 Com. Law Rep. 147. the witness testified, that he once saw the party sign 1ns name, but the fact made so slight an impression on his mind, that, judging from that simple occurrence, he was unable to say whether the handwriting to the agreement was the defendant’s or not; yet lie was permitted to compare the signature with the one which he had seen him sign, and on that comparison to give evidence that it was the party’s hand-writing. If this was right, I presume there could have been no doubt, but that the defendant might have called witnesses to examine the same papers, and give their opinions that the hand-writing was not the same, and that the plaintiff might fortify his witness, by the examination of others agreeing with him. His evidence was nothing, though he saw the defendant sign the paper he produced: he had nothing in his mind to compare *228 by any more than other witnesses, who never saw him write, until he compared them: and why should he be more capable of making a correct juxtaposition comparison than they ? Probably (as I should have been) he was less capable than many of the by-standers of forming a correct opinion. Other cases of a like kind are referred to in the notes of the late editor of Phillips’s law of evidence, which tend to shew, that the doctrine on this subject is not yet fully settled. The legislature of Massachusetts is said to have settled it there, in favour of comparison, by express enactment. Phillips lays down the general doctrine to be, that the proof of the hand-writing is founded on the knowledge of the general character. The witness is supposed to have found a standard in his own mind, and with that standard to compare the writing in question. But, he says, no other kind of comparison will be allowed: that it is an established rule of evidence, that hand-writing cannot be proved by comparing the paper in dispute, with any other papers acknowledged to be genuine; that one reason usually assigned is, that unless a jury can read, they would be unable to institute a comparison, or judge of the supposed resemblance, (a reason, he thinks, too narrow for a rule of such general application) ; that another reason is, that the writings intended as specimens, would be presented by a party interested to select such writings only as may suit his purpose, and not likely to' exhibit a fair specimen of the character of the handwriting. He adds, that it has been thought by some, an inconsistency in the rules of evidence, to allow a witness to compare, in his mind, the disputed paper with the impression which a short and transient view of writings may have made upon his memory; and yet, on the other hand, not to permit the jury to compare it with writings proved to be authentic, present in court, and open for inspection: and, he says, the only answer which occurs, is that suggested, namely, that the writings which are produced as specimens, having been selected by an interested party, to serve a present purpose, are open to suspicion, and liable to the impu *229 tation of contrivance. The comparison here spoken of, is evidently one to be made by the jury themselves, not by witnesses examining the papers, either separately or in juxtam position, in the manner I have above supposed. These may be very different questions. And as the first, viz. a comparison to be made by the jury themselves, is the question presented by this record; and as, from the hasty examination I have given it, I am not prepared to decide on the other; I must he considered as confining myself to the precise question, presented by this case. And, I think, there may be reasons to support the opinion and judgment of the circuit court, which might not apply to the other proposition above stated, and which will enable us to leave that point open and undecided, until it shall come fairly before us. With due deference, I think that mentioned by Phillips, a very strong reason, why the jury should not enter into the comparison. Those of them who cannot write, would have no evidence before them of which they could judge; for the opinions of their fellow jurors, they not being on oath, would not be evidence for them to act on; they must, consequently, decide on a part of the evidence, the testimony of witnesses to the hand-writing, if any; and so may be unable to unite in the verdict with the others. Other jurors, though able to write their names, and perhaps to read plain writing, may be so unskilled in the art, as not to be competent witnesses, or entitled to any weight were they examined, touching the character of a hand-writing. The result would be, that the jurors, capable of forming an opinion of the hand-writing, must each severally for himself examine the writings, and then be sworn and examined as witnesses; for a juror or jurors, possessing a knowledge of a matter of fact pertinent to the issue, cannot impart that knowledge to his fellow jurors, so as to weigh with them, except on oath, and an examination in court in presence of the parties- A juror, for instance, has seen the party write, and has a knowledge more or less perfect, of the character of his individual hand: he compares the paper in question in his mind, with this *230 knowledge, and thinks it is, or is not the same: hut he cannot give this in evidence to his fellows, except on oath as aforesaid. So here, he examines the specimens, and fixes in his mind the character of the hand-writing of the person who wrote them, and then compares that with the paper in controversy, and comes to a conclusion, one way or another; another examines also, and comes to a contrary conclusion; how are they to impart this knowledge to their fellows ? One may yield his opinion to the other, believing him to be a better judge, and thus, in reality, they give evidence to each other not on oath. The specimens are not evidence, properly so called; they decide nothing; it. is the result of the comparison, that is the evidence; and that depends for its weight on the superiour knowledge, skill or veracity of some jurors over others. The motion to the court here, was not that such of the jurors, or by-standers who were skilled in writing and judges of the character of hands, should examine the specimens, and give evidence of the result of that examination (concerning which I mean to give no opinion), but to give the specimens as evidence to the jury for it to weigh in its retirement. This motion, I think, was properly overruled; and, consequently, that the judgment should be affirmed.
The other judges concurred in the opinion, that the judgment should be affirmed.