Moncure, J.
This is a writ of error to a judgment of the Circuit court of Monroe, convicting Zepheniah Shifflet of felony in burning a mill in Greenbrier; the venue having been changed from Greenbrier to Monroe. There are six assignments of error. Five of them were made in the petition for the writ — the sixth, for the first time, in the course of the argument. Why the last was not sooner made, will hereafter appear. I will notice them in the order in which they were made.
The first is founded on the first and second bills of exception; which raise very similar questions. On the trial of the case, the commonwealth having introduced the prosecutor I). C. B. Caldwell as a witness, who, amongst other things, proved, that previous'to the burning of the mill the prisoner and himself had had quarrels on different questions, and that the prisoner had made use of threats and abusive language to him, from which he had been induced to apprehend *655 violence both to his person and property; thereupon, on the cross-examination of said Caldvveli, the prisoner asked the witness if he was not at that time on bad ■ terms with several other of his neighbors besides the prisoner? The court, on the motion of the attorney for the commonwealth, excluded the question, and the prisoner excepted. Afterwards, the commonwealth having introduced another witness, Ii. F. Hunter, whose evidence tended to show that the prisoner burnt the mill which he is charged with having burnt (other evidence having also been previously introduced by the commonwealth, of a quarrel between the prisoner and prosecutor, and threats used by the former against the latter); thereupon the prisoner asked the witness if he did not know of any other neighbor or neighbors of the prosecutor who had a falling out with him shortly before the mill was burnt, and who had made use of threats of violence against him also. The court, on the motion of the attorney for the commonwealth, excluded this question also; but the prisoner was permitted, without objection, to ask the witness if particular persons had not before that time threatened to burn said mill. The prisoner again excepted.. The evidence introduced by the commonwealth to prove the previous quarrels and threats of the prisoner, as mentioned in these bills of exception, was clearly admissible, to connect the prisoner with the offence charged against him, and to show the motive and intention with which it was committed. The questions asked by the prisoner were, I think, as clearly inadmissible, and were therefore properly excluded by the court. To have admitted them, would have been a violation of what is laid down as the first rule governing the introduction of evidence, .that it must correspond with the allegations, and be confined to the point in issue. “ This rule (as has been well said) excludes all evidence of collateral facts, or those which are inca *656 pable of affording any reasonable presumption or inference as the principal fact or matter in dispute; the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them ; and moreover, the adverse party, having had no notice of such, a course of evidence, is not prepared to rebut it.” 1 Greenl. Evi. § 52. These observations plainly apply to this case. It does not appear that there was (and must therefore be presumed that there was not) a particle of evidence connecting any other person than the prisoner .with the criminal act charged against him. Mere evidence of the quarrels or threats of any other person, certainly would not-have tended to establish such a connection, but would only have tended to excite prejudice in the minds of the jury, and mislead them, and also to take the prosecutor by surprise, who might otherwise have been able to prove that such other person had no connection whatever with the burning of his mill. There is nothing in the case of Rowt’s adm’r v. Kiles’ adm’r, Gilm. 202, which can give any sanction to the admissibility of such evidence. The issue there was on the plea of non est factum. The defendant, in aid of other evidence tending to prove the paper a forgery, offered testimony to show that a son of the obligee had said he could counterfeit the handwriting of the obligor and imitate it well. This testimony was received without objection. .The defendant then offered evidence of the infamous character of the son, which was objected to and excluded; and the defendant excepted, and appealed from the judgment which was rendered against him. His counsel in this court, Mr. Stanard, maintained that the declarations of the son having been received without objection, all accessory evidence should have been admitted;’and testimony as to his character was therefore admissible. Upon this ground, it would seem, the *657 judgment was reversed. Judge Coalter in his opinion, says, “As the first branch of the evidence was not objected to by the plaintiff, we must at present, perhaps, take it to be legally received, and that consequently the other part was improperly rejected.” Id. 206. See also what he says at the conclusion of the same paragraph on p. 207. That this was the ground of reversal is, I think, confirmed by the same case reported in 1 Leigh 216, which is also an authority to sustain the propriety of the exclusion of the evidence offered and excluded in this case.
The second assignment of error is founded on the third bill of exceptions, which was taken to the opinion of the court overruling the prisoner’s motion to exclude Joseph Crane’s evidence of the prisoner’s confession, on the ground that the witness had not heard the whole but only detached parts of it; and permitting the said evidence to go to the jury in connection with the testimony of other witnesses who were present during the whole of the conversation, and whom the commonwealth’s attorney proposed to introduce, and did introduce to prove the same conversation and confession. I think this evidence was clearly admissible ; and as the counsel for the prisoner, in the argument before this court, did not rely upon this assignment of error, and indeed waived it, I deem it unnecessary to say any thing more on the subject.
The third assignment of error is founded on the fourth bill of exceptions. The prosecutor Caldwell, after testifying that a few nights before the burning of his mill, the prisoner came to his house, and abused him, saying just as he left, “D — n you, I will pay you,” or “You shall suffer for what you have done;” stated further, that a few days after the mill was burned, the prisoner approached him, cocked his rifle, changed his pistol from one pocket to the other, commenced abusing witness as he approached him, and *658 continued to do so in a very violent manner, and said just as he left, “ You have not yet got what I intend to give you.” The prisoner moved the court to exclude so much of said evidence as related to a conversation subsequent to the burning of the mill. But the court overruled the motion, and the prisoner excepted. The evidence was relevant to the issue and plainly admissible. It tended to prove an admission of the prisoner, made a few days after the burning of the mill, that he had executed, but in part only, the threat of revenge which he had made against the prosecutor a few days before. Its competency rests on the same principle which sustains the competency of the evidence of that threat. Both tend strongly to connect the prisoner with the criminal act. The previous threat indicated a general purpose of revenge. The subsequent admission indicated that some act had been done in execution of that purpose. In the short interval between the threat and the admission, the prosecutor’s mill was burned. It does not appear that during that interval he suffered in any other way.
The fourth assignment of error is founded on the fifth and last bill of exceptions, which was taken to the opinion of the court overruling the motion of the prisoner to exclude the confessions made by the prisoner to the witness Margrave, on the ground that they were not free and voluntary, within the meaning of the law. The subject of the admissibility of confessions as evidence has recently been fully considered by this court in the case of Smith v. The Commonwealth, 10 Gratt. 734. Judge Lee in his opinion in that case, in which a majority of the court concurred, comes to the following conclusion : “ The rule that may be fairly deduced from authoritative decisions upon the subject is, that a confession may be given in evidence unless it appear that it was obtained from the party by some inducement of a worldly or temporal character in the *659 mature of a threat, or promise of benefit, held out to him in respect of his escape from the consequences of the offence or the mitigation of the punishment, by a person in authority, or with the apparent sanction of such a person.” Let us apply this rule to the present case, and enquire, 1st. Was Margrave a person in authority, within the meaning of the rule? 2dly. Did he hold out to the prisoner such an inducement to confess as the rule requires? 3dly. Did he thereby obtain the confessions in question ? And,
First, Was he a person in authority? The only ground on which it can be contended that he was, is, that he lived in the family of the jailer of Greenbrier county while the prisoner was confined in the jail of said county ; that he sometimes had the keys of the jail; that he attended about the jail; that when the jailer was absent, he carried the keys and had control of the jail, and that a son of the jailer did some things which he did; and that when he was not using the keys, the wife of the jailer kept them. He was neither a deputy sheriff or deputy jailer, or sworn officer of any kind. He was a mere menial of the jailer, and held the same, or nearly the same, relation to the jail as did the jailer’s wife and son. He was not in the, presence of the jailer when he held out the alleged inducement. The decisions excluding confessions have already, it has been often said, gone too far. "And in the more recent cases (says Judge Lee in Smith's Case, 10 Gratt. 739), the judges have plainly manifested a disposition not only not to c.ariy the doctrine any further, but also, to some extent, to retrace their steps, and to adhere more closely to the proper discrimination to be made between the different kinds of inducements that may be supposed to have led to a confession, and the characters of the parties by whom the same may appear to have been held out.” I know of no case in which it has been held that a person *660 occupying such a relation to the prisoner as was occupied by the witness Margrave in this case, is a person in authority within the meaning of the rule in question. Persons in authority within the meaning of that rule, are generally, if not always persons engaged in the apprehension, prosecution or examination of the prisoner. The prosecutor, the officer who makes the arrest, and the magistrate before whom the prisoner is carried, are clearly persons in authority; and inducements held out in their presence, without their objection, are regarded as held out by them. There are others who may also be persons in authority. If a jailer in whose jail the party making the confession is confined, be such a person (as to which I express no opinion), there is, I think, neither reason nor authority for saying, that a mere member of the family of the jailer, holding no office of any kind, nor having any connection with the prisoner further than to attend about the jail, and in the absence of the jailer to have control of it and carry the keys, is a person in authority within the meaning of the rule. If he is, so also, it seems, would be the wife of the jailer in this case, who kept the keys when the witness was not using them; and the son of the jailer, who sometimes acted for him. What power could any such subordinates be reasonably supposed to have, to execute any promise or threat they might make to a prisoner, in respect of his escape from the consequences of the offence, or the mitigation of the punishment.” It has been sometimes held that.the wife of a prosecutor is a person in authority. But only, it seems, where the offence, in some way or other, especially concerns her. In Hardwick's Case, 1 Carr. & Payne 98, 11 Eng. C. L. 328, in note, a confession made before a magistrate was objected to on the ground that the wife of the constable had told the prisoner previously that he had better confess. Baron Wood overruled the objection. *661 and it would seem, on the ground that the constable’s wife was not a person having authority. Joy 262. I think, therefore, that the witness Margrave was not a person in authority. But even if he was,
Secondly, Did he hold out to the prisoner such an inducement to confess as the rule requires? “The doctrine of inducements (says Baron Parke) has been carried to the verge of common sense.” In Regina v. Baldry, 2 Denn. C. C. 430, 12 Eng. L. & E. R. 590, recently decided by the English court of criminal appeal, the same learned judge expressed the opinion, “ that the rule has been extended quite too far.” But I doubt whether in any case it has been extended so far as to make what was said by the witness to the prisoner in this case such a promise or threat as would amount to an inducement, within the meaning of the rule. The inducement, according to the rule before stated, must have reference to the prisoner’s escape from the consequences of the offence, or to the mitigation of the punishment. And it must be calculated to lead the prisoner to suppose it would be better for him to admit himself to be guilty of the offence, though he never committed it. Joy on Confessions 13; 2 Russ. 826, 845. If the prisoner be told that it will be better for him to confess, or worse for him not to confess, or words to that effect be addressed to him, the inducement will be sufficient to exclude the confession. 1 Greenl. Evi. § 219. In such a case, the question does not turn on what may have been the precise words used, but whether the words used were such as to convey to the mind of the prisoner an intimation that it will be better for him to confess that he committed the crime, or worse for him if he does not. Wharton 259; Garner's Case, 1 Denn. C. C. 329. The apparent conflict in the cases on this subject has, no doubt, in a great degree arisen from the different constructions which judges have placed upon similar words when *662 used under different circumstances and in a different connection. A great deal must be left to the discretion of the judge in such cases, who must decide whether, under all the circumstances, the words used express or imply a promise or threat, and were so understood by the prisoner. We see cases in the books in which it is difficult to discover a promise or a threat in the words used to induce the confessions which were excluded: And yet, the judges who decided those cases may have discovered it very plainly. It will not do, therefore, to say that because certain words have been held in certain cases to imply a promise or a threat, the same or similar words must be held in every case to imply a promise or a threat. About the rule itself there is no dispute; that there must be a promise or a threat. The only difficulty is in the application of the rule; and in that there is sometimes much difficulty: But in this case I think there is very little. Let us now see how the rule applies to the facts of the case.
The witness stated that he went into the jail where the prisoner was confined, and that prisoner said, “ I do not know what they are keeping me up here for; I have never done any thing.” Witness then said, “I do not believe one word you say. I believe you know all about it, and your mother too.” To which prisoner replied that witness vras mistaken ; and that his mother knew nothing about it. Witness then remarked to prisoner, “ It is not worth while for you to say any thing more to me about it, for you have got to go to the penitentiary any how.” Prisoner said, “I know that. I am satisfied I will have to go, but mother is innocent of it; and there were older men than me engaged in it, and I want you to go and tell Captain Crane, and J. H. Wetzel, D. C. B. Caldwell and D. H. Stalnaker to come down here.” Witness said, “ What do you mean by what you say ? In the *663 name of God and all that is holy, have you let this charge rest on your mother, and she innocent of it?” “ Yes (prisoner replied), she is innocent of it, but there are older men than me engaged in it, and I am determined to have those men arrested.” Witness said, “Are you joking with me?” Prisoner replied, “No, sir, I am not joking with you — will you go and tell Crane, Wetzel, Caldwell and Stalnaker to come down here ?” Witness stated that he accordingly went for the men thus named. H& also stated that the night before the conversation above mentioned, prisoner had requested him to go and tell Captain Crane he wished to have a private talk with him; which witness had done. He then mentioned another confession made by the prisoner about two months thereafter; but it is unnecessary to set forth that more particularly. The witness also stated that the prisoner had always, previous to the said conversation, denied having committed the offence charged against him; and stated in conclusion, that he had never made use of any threat or promise to induce the prisoner to make any confession. So that if he did make any such threat or promise, expressly or by implication, it must be found in what he said to the prisoner as before set forth. Is it to be found there ? I think not. Much less a threat or promise “ in respect to the prisoner’s escape from the consequences of the offence or to the mitigation of the punishment.” But for some of the adjudged cases, I do not think there could be the least doubt or difficulty upon the question. Mills’ Case, 6 Carr. & Payne, 146, 25 Eng. C. L. R. 324, was very much relied on in the argument. It was a nisi prius decision and certainly extended the rule very far. A constable, whilst he had the prisoner in custody, asked him whether he had committed the felony? He denied it. The constable then said, “ It is of no use for you to deny it for there is the man and boy who will swear they saw you do *664 it.” Gurney, B. held this was an inducement, and re= fused to receive the statement. “ These words (says ■ Mr. Joy) seem to have been construed by the learned judge as the same, in effect, as if the constable had said, it will be better for you to confess, for they will swear against you and convict you, whether you do or not.” Joy on Confessions 7.
The observations made by that author on the next case he notices, to wit, Shepherd’s, seem to be alike applicable to Mills’ Case. “ The manner (he says) in which the words were used (meaning the words used by the constable to the prisoner in Shepherd’s Case), may have been considered by the learned judge, who saw and heard the witness, to be of a threatening nature, and calculated to lead the prisoner untruly to confess himself guilty.” Id. 8. He says in a note, that Shepherd’s Case has been controverted. And yet it seems to be a stronger case for the exclusion of the confession than Mills'. But surely neither of those cases can justly be said to be like this. There, a constable made an arrest, and used words to the prisoner, which the judge who saw and heard the witnesses construed to imply that it would be better for the prisoner to confess. Here, a person attending about a jail, and having control of it in the absence of the jailer, but not being an officer of any kind, had a conversation with a prisoner confined in the jail, which seems to have been casual, and brought on by the prisoner himself, in which conversation the words used by such person do not naturally import any promise or threat, and were not so construed by the judge who saw and heard the witnesses. Griffith's Case, 2 Russ. 832, 838, was also relied on. But what was said by the prosecutor there, connected with the reply of the prisoner, plainly implied an understanding on the part of the latter, that if she would confess, she would not be taken before the magistrates. On the *665 other hand, I would refer to Thornton’s Case, 1 Moody’s C. C. R. 27, in which a constable had harshly interrogated a boy of fourteen years of age, when under detention without a warrant, and accused him of telling falsehoods, and in a manner calculated to intimidate, and made him cry, but held out no promise or threat as to his escaping from the charge against him. The confession was held admissible by seven judges out of ten. Joy 13, and 2 Russ. 847-8, where the case is fully stated.
But it was argued, that the witness led the prisoner to believe that his mother would be benefited by his confession; and that, in effect, the witness not only advised, but most earnestly appealed to the prisoner to confess his guilt. I do not so construe the words of the witness; nor do I perceive how the prisoner’s mother could be benefited by his confession of his own guilt, especially if he were innocent. And we have seen that the inducement, in order to exclude the evidence, must be calculated to make the prisoner believe that it would be better for him to confess his guilt, though he were innocent. But even if he could have benefited his mother by confessing his own guilt, it would not have been such a benefit as the rule contemplates. See Nolan's Case, 1 Crawf. & Dix C. C. 74, referred to in Joy 16, and Russ. 847. I therefore think the witness held out to the prisoner no such inducement to confess as the rule requires. But if he did, it remains to enquire,
Thirdly, Did he thereby obtain the confessions in question ? If an inducement is held out and a confession immediately made, the presumption would be conclusive, in the absence of evidence to the contrary, that the confession was obtained by the inducement. But the circumstances of the case may repel the presumption, and show that the confession was made irrespectively of the supposed inducement. And such I *666 think is the case here, if it can be said that any inducemenf was held out by the witness. He had never, he made use of any threat or promise to induce the prisoner to make any confession. The night before his conversation with the prisoner, before stated, the prisoner requested him to go and tell Capt. Crane he wished to have a private talk with him. The said conversation was commenced by the prisoner; and, both in the course and at the conclusion of it, he repeated the request that witness would go and tell Capt. Crane and also three other persons to come down to the jail. These circumstances indicate that the purpose of the prisoner to make the confession, such as it was, existed prior to his said conversation with the witness, and was not induced thereby. I see nothing in that conversation, or the relation of the parties, which was adequate to induce it. What induced it, does not appear. He no doubt had a motive. “ I take it, no man ever makes a confession, voluntarily (says Taunton, J.), without proposing to himself in his own mind some advantage to be derived from it.” Green’s Case, 25 Eng. C. L. R. 581. But such an inducement cannot render the confession inadmissible. It is said in 2 Russ. 847, that if the proposal to confess comes from the prisoner, it seems his confession is admissible, although the prosecutor, in consideration of his doing so, says he will do all he can for him. In support of this observation, Green’s Case, supra, is cited. I therefore think the witness did not obtain the confessions by any inducements held out by him ; and in every view of the case, I am of opinion that the confessions were admissible evidence.
The fifth assignment of error, and the last taken in the petition, is, that the court erred in entering up a judgment on the verdict, or in trying the case at all, because, beyond the endorsement on the indictment, there was nothing to show that the grand jury had *667 ever found a true bill in the case. This objection was not taken in the court below, but, for the first time, in the petition. The prisoner’s counsel contends, however, that it is “a fatal objection; whether made before or after verdict, whether upon a motion in arrest of judgment in the court below, or upon an assignment of errors, for the first time, in an appellate court.” And for this, he cites Cawood's Case, 2 Va. Cas. 527. That case seems to sustain the position; and the objection would probably be fatal, if the finding of the grand jury was not in fact recorded. As the record originally came up to this court, it did not appear that the finding had been recorded. The prisoner had been indicted in Greenbrier, and on his motion the venue had been changed to Monroe. The clerk of the Circuit court of Greenbrier, instead of sending to the clerk of the Circuit court of Monroe a certified copy of the record of the case, as directed by the Code, ch. 208, § 24, p. 776, only sent the original indictment, with the endorsement thereon of the finding thereof, signed by the foreman of the grand jury, and a certified copy of the order changing the venue, remanding the prisoner to the jail of Green-brier for removal to the jail of Monroe, and recognizing the witnesses on behalf of the commonwealth to attend as such on the first day of the next Circuit court of Monroe. At that court, the prisoner was arraigned and pleaded not guilty to the indictment, and was tried, and convicted thereon. The petition for a writ of error to the judgment was accompanied by a copy of the record of the case in the Circuit court of Monroe, which embraced only so much of the record of the case in the Circuit court of Greenbrier as had been sent or certified by the clerk of the latter to the clerk of the former as aforesaid. After the writ of error was awarded, this court, on the motion of the attorney general, awarded a certiorari, to be directed to *668 the clerk of the Circuit court of Greenbrier, to certify the record of the case in that court more fully to this court. There has been no regular return of the certiorari by the clerk of that court to this. But he certified a copy of the record of the proceedings in the case in that court to the clerk of the Circuit court of Monroe, who has sent a certified copy to this court; which, by consent of the attorney general and the counsel for the prisoner, is to be regarded as a copy of the proceedings in the Circuit court of Greenbrier, duly certified to this court, in obedience to the certiorari. If this addition can properly be made to the record on which the case is to be determined by this court, it will remove the ground of the objection now under consideration, as it shows that in fact the finding of the indictment by the grand jury was duly recorded in the Circuit court of Greenbrier.
But it is contended on behalf of the prisoner, that this court had no right to award a certiorari to the clerk of the Circuit court of Greenbrier; and that no part of the proceedings of that court which had not been certified to, or was not before the Circuit court of Monroe when the case was tried therein, can properly be certified to and be regarded as part of the record before this court. It is said that this court has no power to award a certiorari, except where it is given by statute; and that the only statute giving such power, is the Code, ch. 182, § 7, p. 684, which provides that the appellate court “ may, in any case, award a writ of certiorari to the clerk of the court below, and have brought before it, when part of a record is omitted, the whole or any part of such record and it is contended that the Circuit court of Monroe, and not of Greenbrier, is “ the court below,” within the meaning of this provision. I think that both of these courts are “ the court below,” according to the very terms as well as the true intent and meaning of the statute. The *669 law authorizing the venue to be changed for the trial of a case, makes the two courts in effect but one court, as to that case; which is proceeded with in the court to which the venue is changed, from the point to which it had proceeded in the first court, when the change was made. There is but one record of the case. But part of it is in one court and part of it in the other. The law, for the sake of convenience, makes a certified copy of the record of the case in the first court, sufficient for the purpose of further proceedings in the other court. But it does not make that copy the record itself; and whenever it is necessary to know what is the true record of the case in the first court, recourse can only be had to that court or the clerk thereof. If the prisoner had raised the objection in the Circuit court of Greenbrier, before the venue was changed, that there was no record of the finding of the grand jury, the record itself would at once have answered the objection. If he had raised it in the Circuit court of Monroe, after the venue was changed, a perfect copy of the record of the case in Greenbrier would have been ordered and obtained by the Circuit court of Monroe, and would have answered the objection. He raised it in neither of those courts, but for the first time in this court. Is this court powerless to obtain a perfect copy of the record for the purpose of ascertaining whether the objection is well founded or not? I think not. Cawood’s Case shows that the certiorari was properly awarded in this case, as the venue had been changed in that case, and a certiorari was awarded to the clerk of the court in which the prosecution was commenced. It is said that that was an adjourned case, and the writ was awarded on the motion of the prisoner. I do not think these facts material to the question. The case was argued by able counsel, and with great ability. No question was raised as to the power of the court to award the writ, or as to the propriety of that *670 •mode of proceeding. It would hardly have been moved for, if it had not been considered necessary by the counsel for the prisoner, to have a full copy of the record of the court in which the indictment was found, for the purpose of ascertaining whether the finding was recorded. And yet that was not necessary, if, as now contended, this court can look only for that purpose to the record of the court which rendered the judgment. For the record of that court certainly did not show that the finding was recorded. It devolves on the plaintiff in error to show that there is error in the judgment; and he must show it by the record. In this case, he only shows that there was a chasm in the record, as it originally came up to this court, and that the finding of the indictment may or may not have been recorded. It devolved on him to fill up that chasm, and show whether or not the finding was in fact recorded. He cannot complain that the burden which devolved on him has been borne by the commonwealth. It is said that the person as to whom the finding was recorded, might have been a different person from the prisoner. I think there is nothing in that objection. An indictment was found against the prisoner in Green-brier. He moved for and obtained a change of venue to Monroe, where, without raising the question of identity, he pleaded to the indictment, and was tried and convicted: and the copy of the record now certified to us shows that the finding of that indictment was duly recorded.
But that copy (in connection with the residue of the record) discloses another ground of objection to the judgment, which was taken, for the first time, in the argument before this court, and constitutes the sixth and last assignment of error, to wit, that the prisoner was tried and convicted upon the whole indictment, although the second count had been quashed. He was arraigned in the Circuit court of Greenbrier, and *671 on his motion the second count of the indictment was quashed : thereupon he pleaded not guilty to the first and third counts, and moved for a change of venue ; which was accordingly ordered on a subsequent day of the term. A copy of that order only, with the original indictment and endorsement thereon, having been sent to the Circuit court of Monroe, he was again arraigned in the court, and pleaded not guilty to the indictment, without taking any notice of the order which had been made in the Circuit court of Green-brier quashing the second count. A general verdict of guilty was found against him, and judgment was rendered accordingly. If it be conceded that he did not, in effect, waive the benefit of the order quashing the second count, and that it was error to arraign and try him on the whole indictment after that count had been quashed, still I think it is not an error to his prejudice, and therefore not good ground for the reversal of the judgment. At common law, there was a settled distinction between a general verdict in civil and in criminal proceedings. In the former case, if some of the counts were bad when entire damages were given, it was necessary to arrest the judgment, because the court could not apportion the damages: while in the latter, the court ascertained the penalty, and could apply it to the good counts which were supported by the evidence; and therefore, where the defendant was found guilty of the charge in general, if there were any good counts, the verdict was sufficient, and an entire judgment might have been given. 1 Chit. Cr. Law 249, 640. At an early period in this state, the common law rule in civil cases was changed by statute, which provided, that “ when there are several counts, one of which is faulty, and entire damages are given, the verdict shall be good; but the defendant may apply to the court to instruct the jury to disregard the faulty count.” 1 Rev. Code of 1819, *672 p. 512, § 104. The rule in criminal cases remained unchanged by statute until a very recent period, as will be presently noticed.
In Kirk’s Case, 9 Leigh 627, it was held that the common law rule was applicable to a conviction for felony, punishable by imprisonment in the penitentiary, and that the judgment should not be reversed if any count was good, even though the court below overruled the motion of the prisoner to quash the bad counts. In Mowbray’s Case, 11 Leigh 643, and Clere's Case, 3 Gratt. 615, it was held, contrary to Kirk’s Case, that the common law rule was not applicable to of-fences punishable by confinement in the penitentiary, as the reason of the rule did not apply. Thus stood the law and the adjudications upon it when the act of March 14, 1848, was passed, containing a provision (see Sess. Acts, p. 152, '§ 43), which has been since substantially embodied in the Code, p. 778, § 34, in these words: “ When there are several counts in an indictment or information, and a general verdict of guilty is found, judgment shall be entered against the accused, if any count be good, though others be faulty. But on the trial, the court, on the motion of the accused, may instruct the jury to disregard any count that is faulty.” See Rand’s Case, 9 Gratt. 738, in which the cases and statutes on this subject are reviewed in the opinion of the court, delivered by Judge Daniel. The effect of the provision in the Code is to make the common law rule applicable to all criminal cases, whatever may be the mode of punishment, and however the measure of it may be ascertained. But the accused is effectually protected from injury, by the right which is given him to have the faulty counts excluded from the consideration of the jury. If he does not avail himself of that right; if he does not move the court to instruct the jury to disregard the faulty counts, how can he complain of injury? *673 How is he prejudiced by the judgment? Is not the presumption conclusive, that if he does not make the motion, it is because there is no evidence to sustain the faulty count, or it can do him no harm ? In this case, the first and third counts are certainly good, even if the second be faulty, and a general verdict of guilty has been found. Why should not a judgment be entered against the accused according to the direction of the statute? A judgment has been entered. Why should it be reversed ? Is it because it was error in the court to try the prisoner on the whole indictment, when one of the counts had been quashed? He voluntarily pleaded to the whole indictment, and had only to move the court to exclude the second count from the jury, the court having already decided it to be faulty. He would have made that motion, if he could have derived any benefit from it.
I think there is no error in the judgment, and am for affirming it.
The other judges concurred in the opinion of Moncure, J.
Judgment affirmed.