# Charleston.

## CLAY *v.* ALDERSON'S ADMR.

### Decided April 28, 1877.

1877.
January Term.

C. brought an action of debt against R., administrator of A., to recover the amount of a bond made by A., and another to C, in the life time of A. During the progress of the trial the plaintiff, as rebutting evidence to evidence given to the jury by the defendant, offered to read to the jury a paper marked A., in these words: "Received of Thomas G. Clay, in full of the rent of 22½ acres of land for the year 1860, this 3d day of August, 1861.

J. MARCUS ALDERSON."

And for the purpose of proving the execution of said receipt to the court, so that the same might be read to the jury, the plaintiff placed a witness on the stand, by whom he proved that the signature thereto attached was that of J M. Alderson, the defendant's intestate, and thereupon the defendant's counsel asked the witness who had written the body of the instrument without objection, and the witness replied that it was as he believed, in the handwriting of the plaintiff in the suit, and the court certified that it was then and there thus proved that the body of said receipt was in the handwriting of the plaintiff, and the plaintiff then declared that he admitted that the body of said receipt was in his handwriting; but the defendant's counsel at once declared that the defendant did not design to prove or admit that the said receipt was in the handwriting of the plaintiff, and thereupon the said receipt was permitted to be read to the jury, and was so read; and then the plaintiff placed on the stand James Montgomery, by whom he proved that the witness had been teller in the Bank of Lewisburg for ten years, and that he had been in the habit, as a part of his business, of comparing handwriting and signatures, and that his business had, in his opinion, made him more competent than ordinary persons to detect, by comparison of hands, a genuine from a simulated writing; and the defendant having

read to the jury a paper marked B., in these words: "Received of J. Marcus Alderson, four hundred and ninety-six dollars, payment in full of all demands.

Oct. 15, 1860.                              THOMAS G. CLAY."

   Teste: "LEWIS MILLER."

And asked the witness to take the said paper A and compare the writing of the body thereof with the signature to said paper B., and state to the jury whether or not, in his opinion, the body of said paper A, and the signature to said paper B were written by the same person; to which question the defendant objected, and the objection was sustained, and the court refused to permit the witness to answer the said question. HELD:

This was not error      *Clay v. Robinson, Admr.*, 7th W. Va. R., 348

*Supersedeas* to a judgment of the circuit court of Greenbrier county, rendered on the 23d day of November, 1877, in an action of debt then pending in said court, wherein Thomas G. Clay was plaintiff, and Wallace Robinson, sheriff of Greenbrier county, and as such, administrator of Marcus Alderson, deceased, was defendant.

The *supersedeas* was granted upon the petition of the plaintiff below.

The case was once before in this court upon a *supersedeas* granted upon the petition of the defendant below.

In the opinion of Haymond, J., may be found a sufficient statement of the case.

The Hon. Homer A. Holt, Judge of the eighth judicial circuit, presided at the trial below.

*Matthews & Matthews*, for plaintiff, referred to 1 Green. Ev., §578; upon the subject of handwriting.

*Samuel Price* and *J. W. Davis* for defendant.

*Davis* cited:

*Brugh v. Shank*, 5 Leigh, 598, *Callaghan v. Kippers*, 7 Leigh, 608, and *Gillilan v. Ludington*, 6 W. Va., 128, upon the subject of new trials.

HAYMOND, JUDGE :

This is an action of debt brought in the circuit court of Greenbrier county, by the plaintiff, against the defendant, in the year 1869. A final judgment was rendered in the cause in 1873, by the circuit court, in favor of the plaintiff against the defendant, for $686.25 debt, with interest from the 11th of June, 1873, till paid, and the costs of suit. This judgment was subsequently brought before this Court for review, by *supersedeas*, and this Court at the term thereof which commenced in January, 1874, reversed said judgment, set aside the verdict of the jury rendered in the cause, and remanded the cause to said circuit court for further proceedings therein, to be had according to law. *Clay v. Robinson, admr.*, 7th W. Va. R., 348. Since the reversal of said judgment and at the November Term, 1874, of said circuit court, it appears that another trial of said cause was had, at which, the jury empanneled in the cause, found a verdict for the defendant, and the circuit court rendered a judgment therein in favor of the defendant against the plaintiff for the defendant's costs of suit, &c. To this last named judgment the plaintiff obtained a *supersedeas* from this court, and it is now to be determined whether the circuit court erred in its last named judgment.

The plaintiff has assigned, in his petition, the following as errors in the said judgment, for which he claims it should be reversed by this Court, viz :

1st. The court should have permitted the witness Montgomery to have stated whether, in his opinion, the body of the paper A and the signature to paper B were written by the same person.

*Second.* The court should have sustained the plaintiff's motion to exclude the depositions of the witnesses Hines, Gwinn, Ellis and Johnson.

*Third.* The court should have continued the case.

*Fourth.* The court should have set aside the verdict and granted a new trial.

1877.
January Term.

Clay
v.
Alderson's
adm'r.

The first error assigned is based on plaintiff's bill of exceptions No. 1. By this bill of exceptions it appears that on the trial of the cause the defendant, to maintain the issue on his part, introduced proof that there had been a settlement between John Marcus Alderson, the defendant's intestate, and the plaintiff, in the month of September, 1862, and that the plaintiff had on that occasion executed to said Alderson, his bond for about seventy dollars; and to rebut this proof, the plaintiff offered to introduce evidence to show that he had rented land of J. M. Alderson that belonged to R. D. Alderson, whose administrator the said J. M. Alderson was; that this renting took place in the years 1860–61 and 62, and that the land rented for about $70.00 per year, to the introduction of which evidence the defendant objected, and his objection was overruled, and the evidence given to the jury; and further to rebut said proof, the plaintiff offered to read to the jury a paper marked "A," in the words and figures following, to-wit:

RECEIPT.—" Received of Thomas G. Clay, in full of the rent of 22½ acres of land for the year 1860, this 3d day of August, 1861.

J. MARCUS ALDERSON."

And for the purpose of proving the execution of said receipt to the court, so that the same might be read to the jury, the plaintiff placed a witness upon the stand, by whom he proved that the signature thereto attached was that of John Marcus Alderson, the defendant's intestate, and thereupon the defendant's counsel asked the witness who had written the body of the instrument, and the witness replied that it was, as he believed, in the handwriting of the plaintiff in this suit, and the court certifies that it was then and there thus proved that the body of said instrument was in the handwriting of said Clay; and then the plaintiff's counsel declared that he admitted that the body of the receipt was in the handwriting of the plaintiff, Clay; but the defendant's counsel at once declared that the defendant did not design to prove or

admit that the said paper was in the handwriting of the plaintiff, Clay; and thereupon the said receipt was permitted to be read to the jury, and was so read; and then the plaintiff placed on the stand James Montgomery, by whom he proved that the witness had been teller in the Bank of Lewisburg for ten years, and that he had been in the habit, as a part of his business, of comparing handwriting and signatures, and that his business had, in his opinion, made him more competent than ordinary persons to detect, by comparison of hands, a genuine from a simulated writing; and the defendant having read to the jury a paper marked B, in the words and figures following, to-wit:

RECEIPT.—Received of J. Marcus Alderson, four hundred and ninety-six dollars, payment in full of all demands.

Oct. 15th, 1860.                    THOMAS G. CLAY.

Teste: LEWIS MILLER.

And asked witness to take the paper A and compare the handwriting of the body thereof with the signature to paper B, and state to the jury whether or not, in his opinion, the body of paper A and the signature to paper B were written by the same person, to which question the defendant objected, and the objection was sustained, and the court refused to permit the witness to answer the question, although the defendant did not object to the form of the question. It will be observed that the defendant did not admit that the body of said paper A was in the handwriting of the plaintiff, and it does not appear that he is estopped denying it. It is evident that the only object the plaintiff had in proving that the body of said paper A was in his handwriting, was to institute a comparison of handwriting before the jury, between the handwriting of the body of said paper A and the signature purporting to be that of plaintiff to said paper B. The plaintiff, after proving the body of said paper A to be in his handwriting, admitted it to be such, and then introduced the witness Montgomery, who does not pre-

tend to be acquainted with the handwriting of the plaintiff. If Montgomery's evidence is admissible at all, it must be because he is an expert in distinguishing between handwritings, and that it is competent for him as an expert, without having any acquaintance of the handwriting of the party, to give his opinion to the jury as evidence as to which is the genuine and which the false, or assimulated, or in other words, in this case, whether an expert who has no acquaintance with the handwriting of the party, shall be allowed to give his opinion, founded solely on a comparison of hands, or the juxtaposition of two writings, for the purpose of ascertaining whether both were written by the same person. I don't think the court erred in refusing to allow the witness Montgomery to answer the question propounded under the circumstances and facts disclosed by the record. The question presented here now is clearly within the principle decided by this court when this cause was before it heretofore. It will be seen by reference to the opinion of the court given in the cause reported in 7th W. Va. R., 348, that the Court, at pages 359, 360, 361, 362 and 363, in considering and passing on bill of exceptions No. 1, then in the record, considered at length and decided in effect the question now under consideration. It will be seen by reference to the syllabus of the cause, that the Court then held as follows : " 2. C. brought an action of debt against R., administrator of A., to recover the amount of a bond made by A., and another to C., in the lifetime of A. One of the pleas in the cause was payment; on which issue was joined. At the trial C., to maintain the issue on his part, gave, in evidence to the jury, the said bond, dated the 9th of August, 1859. R., then, to maintain the issue on his part, read in evidence a paper writing, purporting to be a receipt from C. (plaintiff) to A., deceased, in full of all demands, dated October 15, 1860 ; C., denying the genuineness of said receipt, and of the signature thereto, was then permitted by the court, without objection, to prove to the jury, by

evidence, that the body of said bond was in the handwriting of C. Held: That, after the court had so allowed the proof, that the body of said bond was in the handwriting of the plaintiff, to go to the jury, without objection, as aforesaid, it was error in the court to permit a witness, who was an expert, and who was not acquainted with the handwriting of C., to give as evidence his opinion, (founded solely upon the comparison of handwriting of the body of said bond and the signature to the receipt), was not written by the same person, as the fact that the body of the said bond was in the handwriting of C., plaintiff, does not appear to have been admitted by the defendant, or that the defendant was in any way estopped from denying the fact; and it not appearing that the said bond, or receipt, belonged to the witness, who was himself previously acquainted with the party's handwriting, and exhibited them, or either of them, in confirmation or explanation, of his own testimony. (Perhaps other cases may arise where such evidence would be admissible, and cases also which should be held to be exceptions to the rule, which is not now determined). Here the writings were not of ancient, but comparatively of recent date, and witnesses were examined who were acquainted with plaintiff's handwriting." The only material difference I am able to perceive between the case as now presented to this Court, and when it was heretofore before us, is, that at the first trial the plaintiff, without objection, proved that the body of the bond in suit, and which was in evidence, was in the handwriting of the plaintiff, and then offered Montgomery, as an expert, to compare the handwriting of the body of the bond with the signature to the receipt, purporting to be the signature of the plaintiff, and to state his opinion as to whether the body of the bond and the signature to said receipt were written by the same person. And at the last trial the plaintiff gave in evidence the said paper A., which purports to be a receipt of the defendant's

intestate, given by him to the plaintiff, on the 3d day of August, 1861, for the purpose stated in the bill of exceptions, after proving by a witness that the signature to said receipt was that of John Marcus Alderson, the defendant's intestate. And the plaintiff, after having thus proven the signature to the receipt, by his counsel, asked the witness, without objection, who had written the receipt, and witness replied that it was, as he believed, in the handwriting of the plaintiff, and the court certifies that it was thus proved that the body of said receipt was in the handwriting of plaintiff, and then the plaintiff declared that the body of the receipt was in the handwriting of the plaintiff, and the defendant's counsel declared that the defendant did not admit that the said receipt was in the handwriting of the plaintiff. Thereupon the plaintiff placed the witness, Montgomery, on the stand as an expert, to compare the handwriting of the body of said receipt, or paper A, with the signature purporting to be that of plaintiff, to paper B, which is also a receipt, and dated the 15th day of October, 1860, and to state whether, in his opinion, the body of the said paper A and the signature to said paper B, purporting to be that of the plaintiff, were written by the same person. At the first trial, it was a comparison of the handwriting of the body of the bond in suit with the signature to said paper B, and at the last trial it was a comparison of the handwriting of the body of said paper A, with the signature to said paper B. There is no material difference in principle in the question now presented to the Court, and under consideration, and the question heretofore decided by this Court in this case. The plaintiff's first assignment of error is, for the foregoing reasons, not well taken, and is therefore overruled.

Plaintiff's second assignment of error. By the plaintiff's bill of exceptions, No. 2, it appears that on the trial of this cause, the plaintiff introduced evidence tending to impeach the character for truth and veracity of Lewis Miller, a witness who had been introduced and

examined on behalf of the defendant. Whereupon the defendant, to sustain the character of said Miller as a man of truth, offered to read in evidence to the jury the depositions of Charles R. Hines, Andrew Gwinn, Wm. Ellis and Wm. T. Johnson, to the reading of which, and of each question and answer, for the purpose aforesaid, the plaintiff objected as they were severally offered, which objections were severally overruled by the court, and the said depositions respectively suffered to be read to the jury; to which rulings respectively of the court the plaintiff excepted.

On examination and inspection of the said depositions of said Hines, Gwinn, Ellis and Johnson, which are in the record, I am unable to perceive error in the judgment and ruling of the court in permitting the said depositions to be read. *Lemmon v. The State,* 4 W. Va. 755; *Bucklin v. The State of Ohio,* 20 Ohio R., 18, cited in the next case as *Buckie v. The State of Ohio; Clay v. Robinson,* 7 W. Va., 348. The evidence of the said witnesses, as contained in their depositions, is much stronger than the evidence of the witness introduced in the case last cited. The admission of the evidence of said witnesses in support of the character of the witness Miller is not in conflict with the decision of this Court in the cases cited in 7 W. Va., as this Court understands and interprets the said depositions, and the question decided in that case as to the admissibility of the evidence. The plaintiff's second assignment of error is, therefore, not well taken, and is overruled.

The plaintiff's third and fourth assignments of error. There is no bill of exceptions signed by the Judge appearing in the record, which embraces these assignments of error, or either of them. And this Court held in the case of *The Commonwealth, use, &c., v. Hall,* 8 W. Va., 259, that "A bill of exceptions to the opinion of the Court overruling a motion for a new trial, not being signed by the Judge, does not become a part of the record, and the evidence therein reported

8

cannot be examined by an Appellate Court." If the Court erred to the prejudice of the plaintiff, in refusing to continue the case, or in refusing to grant a new trial, the error does not appear on the record, by bill of exceptions, or otherwise, so as to authorize this Court to reverse the judgment by reason of these alleged errors. But I have looked into what purports to have been intended for plaintiff's bill of exceptions No. 3, but which is not signed by the Judge, and if said bill of exceptions had been signed by the Judge, it is very clear, from what therein appears, that the Court did not err in refusing to continue the cause, or in overruling the plaintiff's motion for a new trial. The plaintiff's said third and fourth assignments of error are not well grounded, and are overruled.

For the foregoing reasons, the final judgment of the circuit court of the county of Greenbrier, rendered in this cause in favor of the defendant, against the plaintiff, must be affirmed, with costs and $30 damages to the defendant in error against the plaintiff in error.

The other judges concurred.

JUDGMENT AFFIRMED.