# CHARLESTON.

## STATE *v.* KOONTZ.

Submitted January 20, 1888.—Decided February 25, 1888.

EVIDENCE—FORGERY—SIGNATURE.

Upon the trial of an indictment for forgery, when it becomes necessary to prove the genuine signature of the party whose name is alleged to have been forged, it is inadmissible to give in evidence to the jury the genuine signature of such party, although written in the presence of the jury, that they may judge by comparing the same in whole or in part with any part of the alleged forged signature, whether the party who made the forged signature tried to imitate any part of the genuine signature of the party whose name is alleged to have been forged.

Statement of the case by WOODS, JUDGE:

At the November term, 1886, of the Circuit Court of Nicholas county, Haymond Koontz was indicted for the crime of forgery. The indictment contained two counts, in the first of which he was charged with feloniously forging in said county on the — day of ——, 1886, a certain order on G. H. Alderson for the payment of three dollars, purporting to be made and signed by one M. H. Koontz, (setting out the order *in hæc verba*,) with intent to defraud, to the prejudice of the rights of said M. H. Koontz, against the peace, etc. In the second count he was charged with feloniously uttering and attempting to employ as true the said forged order, (setting it out *in hæc verba*,) with intent to injure and defraud, then and there well knowing the said order to be forged against, etc. The indictment was found upon the information of Wallace Rader and M. H. Koontz, whose names appear at the foot thereof. The defendant moved to quash the indictment, which motion the court overruled. He then pleaded "not guilty," on which issue was joined, on which a trial was had resulting in the following verdict: "We, the jury, find the defendant, Haymond Koontz, guilty as charged in the indictment." The defendant moved to set aside the verdict and for a new trial, which motions were overruled, and the defendant excepted. He also excepted to certain

rulings of the court during the trial, which were saved by proper bills of exceptions. The court entered judgment on the verdict that the defendant be imprisoned in the penitentiary for two years. To this judgment the defendant has obtained a writ of error.

*J. W. St. Clair* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

WOODS, JUDGE :

Five grounds of error are assigned : *First*, in overruling the motion to quash the indictment; *second*, in permitting the jury to compare the signature of M. H. Koontz, written by him in the presence of the jury, with the signature to the forged instrument for the purpose of ascertaining whether or not the writer thereof attempted to imitate the letter "M," in the genuine signature, alleged to have been forged; *third*, in admitting certain testimony set forth in the bill of exceptions; *fourth* and *fifth*, in refusing to set aside the verdict and to grant him a new trial.

There is nothing in the first ground of error alleged. No error or defect in the indictment is pointed out or referred to, and we have been unable to discover any defect upon the face thereof, and we concur in the opinion announced in his brief by the attorney-general that the indictment was not only accurately and skillfully drawn, but it reflects credit upon the representative of the State who prepared it. The motion to quash the indictment was properly overruled. Neither is there anything in the supposed error, admitting the evidence of the jailer, and the witness, Rusk, set out in the bill of exceptions, that the accused, while in jail upon this charge, had concealed in a crack in his cell a saw for cutting iron, and that one of the bars of the cell window was half cut off by the use of some saw such as was discovered in the spot where the prisoner said the same was concealed. When asked by the jailer, where the saw was, the prisoner said he could not get it for him ; that he told the jailer he would get it for him that evening if he could, but that he couldn't get it ; but, upon the jailer threatening to take him up stairs and chain him to the floor, the prisoner told him he

could not get the saw, but he would show him where it was. The prisoner then got up and pointed out a certain crack, and told the jailor, "There is where the saw is." A plank was raised and the saw was found where he said it was. This evidence, although exceedingly weak, was admissible under the well-established rule of evidence, that where a party charged with or in custody for a crime which he is alleged to have committed, attempts to escape, or to evade the threatened prosecution, it becomes one of a series of circumstances from which guilt may be inferred, and the court did not err in allowing this evidence to be given to the jury. Whart. Crim. Ev. § 750. Neither did the court err in refusing to set the verdict aside for the reasons set forth in the prisoner's affidavit filed in support of the defendant's motion. The affidavit of the accused clearly admits "that the body of the order alleged to be forged is in his handwriting," and avers that since the trial he has discovered witnesses who, during the trial, saw the said writing, and will testify that the signature thereto is not in the handwriting of the accused, but that the signature is in the handwriting of one James Koontz; but he fails to give any sufficient reason why they were not summoned or examined as witnesses on the trial, or that he made any effort to discover evidence to prove the fact to which he states these newly-discovered witnesses will testify. Every material fact in his affidavit is denied by the affidavits filed on behalf of the State; which, in addition thereto, show that the accused never expressed a desire by himself or counsel to see the forged order, which would have been freely exhibited to him if he had done so. Neither did the court err in refusing to continue the cause on account of the absence of Mr. St. Clair, whom he claims to have retained as counsel. The affidavit on the part of the State shows that the only counsel who ever appeared for him was present in court on the trial, and had declined to serve him because he failed to carry out certain preliminary arrangements agreed upon. The court, therefore, did not err in overruling the defendant's motion to continue the cause.

The defendant's second ground of error remains to be considered. At the trial, as appears by the bill of exceptions, an "expert" witness having stated among other things that

whoever wrote the name of M. H. Koontz to the alleged forged order had, in making the letter "M," tried to imitate that letter in said Koontz' genuine signature," and, the prosecuting attorney stating that he would claim before the jury that such was the fact, the prosecution required the prosecuting witness, M. H. Koontz, whose name is charged to have been forged, to write his name, "M. H. Koontz," upon a piece of paper, and then offered the said piece of paper, with said name so written upon it, to the jury for the purpose, and only for the purpose, of ascertaining from a comparison of the "M" in the signature charged to have been forged, and the "M" in the name upon said piece of paper, that the party writing the signature to the questionable paper attempted to imitate the handwriting of the witness as to the letter "M," "the judge saying that the paper goes to the jury for the sole purpose of ascertaining by a comparison of the two letter 'M's' the one in the instrument, and the one in the name of M. H. Koontz written on the slip of paper, whether the party who signed said instrument attempted to imitate the signature of witness as to the letter 'M,' and not for the purpose of comparing the genuine signature or any part of it with the one charged to be forged upon the question of its genuineness." We are thus brought face to face with the question whether, when the genuineness of the signature to a paper-writing is denied, it is competent for either party to the controversy to give in evidence to the jury other signatures of the same party, which are admitted to be genuine, in order that the jury, by comparing the one with the other, may determine whether the disputed signature is genuine or not.

The well-established rules of evidence recognize two modes of acquiring the knowledge of the handwriting of another, either of which is universally admitted to be sufficient to enable a witness to testify to its genuineness. The first is from having seen him write. The second mode is having seen letters, bills, or other documents purporting to be the handwriting of the party, and having afterwards personally communicated with him respecting them, or acted upon them as his, the party having known or acquiesced in such acts, founded upon their supposed genuineness ; or by such adoption of them into the ordinary business of life as induces a reasona-

ble presumption of their being his own writing; evidences of the identity of the party being of course added *aliunde*, if the witness is not personally acquainted with him. 1 Greenl. Ev. § 577; 2 Phil. Ev. 247-251. A third mode of obtaining this information has been proposed, which may be resolved into the question " whether documents irrevelant to the issues on the record may be received in evidence at the trial to enable the jury to institute a comparison of hands, or to enable a witness to do so."

The modern English decisions are clearly opposed to admitting such evidence upon an examination in-chief for the mere purpose of enabling the jury to judge of the handwriting. For this two good reasons have been assigned—*first*, fraud in the selections of the writings offered as specimens for the occasions ; and, *secondly*, that if admitted in evidence the genuineness of these specimens may be contested, and others successively introduced to the infinite multiplication of collateral issues, and the subversion of justice ; to which may be added the danger of surprise upon the other party, who may not know what documents are to be produced, and therefore may not be prepared to meet the inference drawn from them. 1 Greenl. Ev. § 580 ; 2 Phil. Ev. 255. And, even when this third mode of obtaining such information has been allowed, it has been held to be an established qualification of this last-mentioned rule that documents irrelevant to the issues on the record are not to be received in evidence at the trial in order to enable a jury to institute such a comparison, except either when the handwriting acknowledged to be genuine is already in evidence in the cause, or the disputed writing is an ancient document. 2 Phil. Ev. 256.

However this third mode of obtaining such information of a party's handwriting may have been held in other courts, or adopted by statute, the Supreme Court of Appeals of Virginia, in the well-considered case of *Rowt's Adm'r* v. *Kile's Adm'r*, 1 Leigh 216, held that, " upon the trial of an issue on the plea of *non est factum*, whether the party's signature to the instrument is genuine or not, it is inadmissible to lay other proved specimens of the party's handwriting before the jury, that it may judge by comparison thereof with the writing in question whether this be

genuine. Such comparison of handwriting is not proper evidence."

In this case, after the defendant had introduced witnesses to prove that the signature of the obligor. and the subscribing witnesses were not genuine, and after the plaintiff had introduced witnesses to prove that the signature of the obligor was genuine, some of whom had not seen him write more than once or twice, and that many years before, none of whom were skilled in the knowledge of handwriting, the defendant offered in evidence a book of accounts kept by the obligor in his life-time, which was proved to be in his handwriting, and another paper proved to be in his handwriting by a witness who saw him write it, in order that the jury might, by comparison of the handwriting of these papers with that of the signature to the instrument in question, judge whether this was genuine or not. But the court would not suffer the book of accounts and paper, so proved to have been written by the obligor, to be given in evidence to the jury, and told the jury that it was not permitted by the law that a question of this kind should be determined by a comparison of handwriting, and that said comparison was not proper evidence for it to act upon. There was judgment for the plaintiff, and, upon appeal by the defendant, the Court of Appeals of Virginia affirmed the ruling of the trial court in excluding said book of accounts and the other paper."

The same question was considered by this Court in *Clay* v. *Alderson's Adm'r*, 7 W. Va. 348, 10 W. Va. 49. The action was debt on a bond for $375.00 executed by A. to C., dated and due August 9, 1859, and the defence was payment. The defendant offered in evidence what purported to be a receipt to A., signed by C., and attested by M., dated October 15, 1860, "for $469.00, payment in full of all demands." The plaintiff, C., denies the genuineness of his signature to the receipt, and, having proved that the body of the bond was in the handwriting of A., he called and had sworn and examined a witness shown to be an expert in the business of examining and comparing signatures, and gave him the bond of $375.00 and the receipt of $469.00, and asked him "whether the bond and the signature to the receipt were written by the same person," and the witness answered that, "in his opinion, the body of said

bond and the signature to said receipt were not written by the same person." The said question and answer were both objected to, but his objections were overruled and the defendant excepted. The plaintiff having recovered judgment, the defendant brought the same by writ of error to this Court, which held that "the principle involved in the case was no other than that which had been repudiated by the Court of Appeals of Virginia in *Rowt's Adm'r* v. *Kyle's Adm'r*, 1 Leigh 216, and therefore the Circuit Court erred in permitting the said evidence of said expert to be given to the jury, and reversed the judgment.

After this reversal the cause was again tried on the same issue. On this trial, after the defendant had introduced evidence tending to show that there had been a settlement between C. and A., nearly a year after the date of said bond, the plaintiff, C., in order to rebut this proof, offered to read to the jury a paper-writing purporting to be a receipt, dated August 3, 1860, given by A. to C. in full of the rent of 22½ acres of land for the year 1860, the body of which was proved to be in the handwriting of C. and the signature thereto in the handwriting of A., and then the plaintiff introduced and examined, as a witness, the same "expert," and asked him to take said receipt, dated August 3, 1860, and compare the handwriting of the body thereof with the signature to said receipt of $469.00, and state to the jury whether or not in his opinion the body of the receipt dated 3d August, 1860, and the signature to the receipt of $469.00, were written by the same person, to which question the defendant objected, and the court sustained his objection and refused to permit the witness to answer the question. On this trial there was judgment for the defendant, and the cause brought by writ of error to this Court, which held that the court did not err in refusing to allow the expert to answer the question propounded under the circumstances disclosed by the record, and that the question presented by this case is clearly within the principle decided by this Court in *Clay* v. *Alderson's Adm'r*, 7 W. Va. 348; *Same* v. *Same*, 10 W. Va. 49.

From the rule established by these authorities in Virginia and in this State we have no desire to depart.

The facts disclosed by this record bring this case clearly within the rule so established. The genuineness of the signature of the prosecuting witness to the order alleged to have been forged was a most material inquiry on the trial of the accused; for, if this signature was genuine, the accused could not have been convicted. It is apparent that, in the opinion of the prosecuting attorney, this material fact was in great doubt, and that, unless this doubt was removed, the prosecution would fail. To supply the evidence necessary to justify a conviction, a witness, proved to be an expert in the examination and comparison of signatures, is, by the prosecuting attorney, put upon the stand and examined, who, among other things, stated that "whoever wrote the name, 'M. H. Koontz,' to the alleged forged order, had, in making the letter 'M' tried to imitate that letter in said Koontz' genuine signature;" and then the prosecuting witness, the person whose name is alleged to have been forged, is required by the prosecution to write his name, "M. H. Koontz," upon a piece of paper, which is given to the jury for the sole purpose of enabling it, by comparing the "M" in the paper alleged to have been forged with the "M" in the name so written in their presence and given to them upon that piece of paper. What transpired before the eyes of the jury was conclusive evidence that the name so written was the genuine signature of M. H. Koontz.

In what respect does this evidence differ from the signature of M. H. Koontz made at any other time to any other paper when such signature is proved to be genuine? In the first case, the proof of the genuineness of the signature in an ocular demonstration; the proof in the latter case may be equally convincing, and yet, in the latter case, such evidence is clearly inadmissible. The cases are precisely the same in principle, while the former would be much more objectionable. One of the strongest reasons against the establishment of such a rule of evidence is "fraud in the selection of the writings offered as specimens for the occasion." How much greater would be the danger of this fraud, if the prosecuting witness, instead of being required to produce such specimens written before the controversy had arisen, were permitted to manufacture them at the moment they are to be given in evidence

to the jury. If such a proceeding were allowed, the party whose name is alleged to have been forged would in all cases be strongly tempted to make the "specimen" resemble the forgery as little as possible. In any such case there would be added the "danger of surprise upon the other party," who would have no means of knowing what kind of a specimen was to be produced, nor could he be prepared to meet the inferences drawn from them.

Nor is the force of the rule established in *Rowt* v. *Kyle*, and *Clay* v. *Alderson*, *supra*, avoided by the particular directions given to the jury by the learned judge who presided at the trial of the cause,—that they were to use the paper, containing the name of the prosecuting witness so written in their presence, "for the sole purpose of ascertaining by comparison of the two letter 'M's,' the one on said paper, and the other on the alleged forged order, whether the party who signed said instrument attempted to imitate the signature of the witness as to the letter 'M,' and not for the purpose of comparing the genuine signature or any part of it with the one charged to be forged, upon the question of its genuineness." Just how the jury could use the name written in their presence to enable them to ascertain, by comparison of the "M" in each name, whether the person who wrote the name to the order alleged to be forged, on making the "M," tried to imitate the "M" on the paper without comparing the genuine signature or some part of it with the one alleged to be forged, we are unable to perceive; nor is it necessary for us to determine this fact, for, as we have already shown, such evidence in relation to the genuineness of the signature to the order alleged to have been forged is inadmissible.

But it is insisted that this case is within the principles applied by this Court in *State* v. *Henderson*, 29 W. Va. 147, 1 S. E. Rep. 225. We do not think so; for the cases are altogether dissimilar. In that case four witnesses were examined by the State, each of whom testified that he or she was acquainted with the handwriting of Ebenezer Leonard, whose name was alleged to have been forged, from having seen him write, and seen much of his acknowledged writing and with his signature; and, being so requested,

each of them, while being examined as a witness, made the letter "L" as Ebenezer Leonard made the letter "L" in writing his signature; and then the State offered the several letter "L's" so made to the jury, to compare them with the letter "L" in the alleged forged signature of Ebenezer Leonard. To the introduction of these letters "L's," so made by the witnesses, as evidence, and to the said comparison by the jury, the prisoner objected, but the court overruled his objection and permitted the evidence to be given to the jury. The prisoner was convicted, and, upon a writ of error, this Court held that the Circuit Court did not err in permitting the jury to take the letter "L's" so made and compare them with the same letter in the alleged forged signature of said Leonard. The letter "L's" so made were not letters made by Leonard; they did not purport to be letters made by him at any other time. They were doubtless made by the witnesses to represent to the eye the image of the letter "L" in the genuine signature, as the same was impressed upon each of their minds. In no other manner, perhaps, could they as clearly convey to the minds of the jury the information wherein each of them had personal knowledge of the difference between the genuine and the forged signature. Johnson, President, delivering the opinion of the Court in that case, said: "The jury was not asked to compare different signatures of Mr. Leonard with his name to the alleged forged receipt. The witnesses were only asked to make an 'L' as they understood Leonard made it, so that the jury could the better understand the testimony."

We are therefore of opinion that the Circuit Court erred in permitting the signature of the prosecuting witness, M. H. Koontz, made in their presence, to be given in evidence to the jury, to be by them compared in whole or in part with any part of the signature to the alleged forged order, for the purpose of determining whether the person who signed said instrument attempted to imitate the signature of the prosecuting witness as to the letter "M."

For these reasons, the judgment of the Circuit Court must be reversed, the verdict set aside, and a new trial awarded.

REVERSED. REMANDED.