# CHARLESTON.

## STATE v. DOMINIC MININNI

### (No. 5422.)

Submitted May 4, 1926.   Decided May 11, 1926.

1. CRIMINAL LAW—*All Circumstances Without Which Conclusion of Guilt Cannot be Drawn, and Every Essential Circumstance Necessary, Must be Established by Full Proof, and be Consistent With Hypothesis of Guilt and Exclude Every Other Reasonable Hypothesis of Innocence.*

    In order to sustain a conviction based in whole or in part on circumstantial evidence, all of the circumstances from which the conclusion of guilt is drawn and without which it cannot be drawn, and every essential circumstance necessary, must be established by full proof, and must be consistent with the hypothesis of guilt and exclude every other reasonable hypothesis of innocence.   (p. 616.)

    · (Criminal Law, 16 C. J. §§ 1568, 1569.)

2. AUTOMOBILES — CRIMINAL LAW — *Circumstances Arousing Strong Suspicion of Guilt, But Which do Not Prove Actual Commission of Crime as Charged, Will Not Sustain Conviction; Evidence Held Insufficient to Sustain Conviction of Driving Automobile While Intoxicated ( Code, c. 43, § 88).*

    Facts and circumstances which arouse strong suspicion of guilt, but which do not prove the actual commission of the crime as charged, will not sustain a verdict of guilty.   (p. 617.)

HATCHER, JUDGE, absent.

   (Criminal Law, 16 C. J. § 1570; Motor Vehicles, 28 Cyc. p. 50.)

   (NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Taylor County.

Dominic Mininni was convicted of operating a motor vehicle on a public road while intoxicated, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

W. P. *Samples,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *J. Luther Wolfe,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Defendant, Dominic Mininni, obtained this writ of error to a judgment of the Circuit Court sentencing him to pay a fine of $50.00 and to confinement in jail for 90 days, upon conviction on a charge of operating a motor vehicle on a public road while intoxicated.

The controlling question in this case is, did the court err in refusing to set aside the verdict of the jury as being contrary to the law and the evidence? In considering this assignment of error all of the defendant's evidence in conflict with that of the State must be disregarded.

It appears from the evidence for the defense that on Sunday morning, November 2, 1924, about 10 o'clock, defendant who was a section foreman for the Baltimore & Ohio Railroad Company stationed at Flemington, started out for a ride in his automobile. He was approached by John Brown and Paul Savage who requested that he take them to the Sand Lick Church, near Wendel, about two miles away. They got in his car and the party drove off. Defendant and his two companions proceeded to the town of Wendel, and later he drove back to the church and left them there. Defendant returned to Wendel. About noon, becoming hungry, he went into a store and purchased some fig cakes and drank some pop. His hunger was still unappeased, and there being no restaurants open, he appealed to a foreign woman to furnish him food. The only thing she had on hand was sauer kraut, and defendant proceeded to satisfy his hunger by consuming a large quantity of that palatable dish. But to his great surprise and pain the pop and fig cakes and the sauer kraut were not at all companionable, with the result that his stomach was up-set, and he became very ill. He had promised Savage and Brown that he would take them back to Flemington, and so later he started back towards the church to pick them up. Defendant drove down the road near the church and stopped his car. His two former companions finally arrived, and upon ascertaining that defendant was too ill to take them home, Brown volunteered his services. The party started off with Brown driving the car; he had some trouble in shifting the gears, and after they had proceeded about a mile, he stopped

the car to remedy the difficulty. As Brown was attempting to start the machine again, Moore, a traffic officer, appeared on the scene and arrested the entire party because he claimed they were intoxicated, took them to Grafton via Simpson, and lodged them in jail. Defendant's two companions were discharged without trial, but he was held, with the result above detailed.

Clarence Moore, the traffic officer, testifying for the State said that upon complaint made to him that some parties were drunk at Wendel, he was on the lookout. While sitting in his car near the company store at that place, he noticed defendant coming out of "Gasoline Hollow" (so called, according to the witness for the State, because of a number of stills reputed to have formerly been located there). Defendant walked past Moore's car, and just as he got to his own car, he staggered up against it. Simpson (another witness for the State) saw him stagger as detailed by Moore. Defendant got into his car, drove down the road about a hundred yards, came back and drove up into "Gasoline Hollow". Moore testified that this took place about 5:30 in the evening—about a half an hour before the arrest was made. Harold Moore, a son of Officer Moore, who was with his father, said he did not see defendant stagger as he went to his machine, but that he did observe the peculiar way defendant drove his car down the road—that "he was on one side of the road part of the time, and would go on the other side and drive awhile. He was all over the road." Officer Moore said that he did not arrest defendant at that time, because he had turned back into "Gasoline Hollow" and he wanted to give him a chance. The officer then proceeded down the road toward Simpson, his home. Just as he got there, he received information that a car containing some drunken men was sitting beside the road. Whereupon, Moore started back toward Wendel, and about midway between that place and Simpson, he came upon the defendant and his companions and took them into custody. He said Brown was trying to start the car; that defendant who was in the rear seat seemed to be asleep; that he thought they were drunk and arrested them on that charge. The witness when asked if he had

detected the odor of intoxicating liquor on defendant when he was taking him into the jail, replied: "Yes, sir, I detected some odor on him." He further stated that defendant had "straightened up" to some extent just before he was put in jail, but his movements were still "peculiar" as he was taken from the car to the jail.

Andy Morgan, another witness for the State, was present at the arrest and saw defendant leaning over the car vomiting. He did not smell intoxicating liquor; said he didn't pay attention to that. He did not know whether the party appeared to have had liquor.

Harold Moore, the son of Officer Moore, saw where some one had vomited on the side of the car. He drove his father's car from Simpson to Grafton, in which car defendant and his two companions were taken to jail in Grafton, and said that there was an odor of intoxicating liquor in that car; that he didn't know whether the odor came from defendant or not, that "I don't know whether it was on him, I guess it was. He was close to me." The witness also stated that in going from the automobile to the jail at Grafton, defendant was staggering. This, in substance, was the evidence of the State.

Defendant's companions corroborate the material parts of his testimony as to the trip to Wendel and the return. They said they had nothing to drink that day; that they did not see defendant drink any liquor, and that they had found defendant by the roadside, apparently very ill, and unable to take them home, whereupon Brown had volunteered to drive the car back to Flemington and was attempting to do so, when the arrest took place. They were uncertain of the time of their return that day, but were of the opinion that it was in the afternoon.

No liquor was found in the car nor upon the person of defendant or either of his companions.

The statute says, "No person shall drive or operate any vehicle, motor driven or otherwise, upon any public road or street in this State, when intoxicated or under the influence of liquors, drugs or narcotics," and provides penalties. Sec. 88; Chap. 43, Code.

Do the facts detailed by the prosecution considered in the light of the circumstances warrant the conclusion, to the exclusion of any reasonable doubt, that defendant operated his car on a public road while intoxicated or under the influence of intoxicating liquors? The only time the officer and his companions saw defendant driving his car was late in the afternoon when he came from "Gasoline Hollow", entered his car, drove down the road about one hundred yards; turned and drove back into "Gasoline Hollow" at Wendel. At that time the officer thought he was intoxicated, basing his reason therefor on the fact that he staggered just before he entered the car standing near the hollow, but he made no arrest. His reason was that as defendant had only driven a short distance, turned and gotten off the road, he would give him a chance. On that occasion, Harold, the son of Officer Moore, noticed that in driving the hundred yards and back defendant drove on both sides of the road and "all over the road". He did not see him staggering. Simpson saw him stagger a little when he reached the car. He had observed him walking quite a distance before he reached the car, but didn't see him stagger until he reached it. All that can be said of this evidence is that defendant walked out of "Gasoline Hollow", which at one time was reputed to be the location of stills, and staggered as he reached his car on the roadside; afterwards in driving down the road a hundred yards to turn and enter the hollow with his car, he drove on both sides of the road and all over it. He did not speed. None of the witnesses were near him on that occasion; no one saw him drink nor detected the odor of liquor.

As tending to show that defendant was intoxicated when he made this turn of 100 yards on the road in Wendel, are the subsequent circumstances surrounding his arrest and trip to the jail. When he was arrested he was not driving; Brown, his companion, had driven the car until it was stopped by him to make some adjustment. It was in evidence that the car was out of repair. Moore says defendant was in back seat apparently asleep. Morgan says defendant was lying over the car vomiting. He did not detect any odor of liquor. Harold Moore says defendant was on the front seat at the

time of the arrest, and he noticed that some one had vomited on the side of the car. The slight discrepancies in the State's evidence are unimportant. In driving his father's car to the jail after the arrest, Harold says he detected the odor of liquor in the car and supposed it came from defendant who was near him. Officer Moore says he detected "some odor" when defendant was walking with him to jail after they had left the car. Neither of these witnesses were asked as to their experience with liquors or the odors therefrom. Moore was allowed to say that he had information that parties were drunk near the roadside and this caused him in part to make the arrest. Defendant accounts for his condition and vomiting by the mixture of food he had taken. The jury may have disbelieved him, and arrived at the conclusion that his condition was superinduced by liquors he had imbibed. But when had he taken these liquors? Before or after he made the 100-yard turn?

The evidence and circumstances surrounding the arrest are circumstantial of his condition when he drove the car near the hollow, and do not convict him beyond all reasonable doubt of the offense as charged. The only direct evidence of intoxication while driving the car was that he staggered when he entered it, and made a turn by driving on both sides of the road and all over it. The other evidence of subsequent vomiting and odors a good period of time thereafter, is circumstantial of the main fact. Defendant is convicted of being intoxicated by evidence of a "stagger", buttressed by evidence of vomiting at a later period, and by an odor at a still later period. It cannot be contended that the incident of "staggering" as detailed would be sufficient upon which to convict. Men often stagger from other causes than intoxication.

To convict of an offense on circumstantial evidence either in whole or in part, all of the circumstances from which the conclusion of guilt is drawn must be established by full proof, as well as every essential circumstance; and when fully proven must be consistent with the hypothesis of guilt, and exclude every other reasonable hypothesis of innocence, in order to warrant a verdict of guilty. *State* v. *Bennett*, 93

W. Va. 548; *State* v. *Dudley*, 96 W. Va. 481; *State* v. *Gilfillen*, 96 W. Va. 661.

The evidence and the inferences which may be fairly drawn therefrom arouse a suspicion that defendant was intoxicated when he was seen driving near the hollow at Wendel. When he drank the liquor which caused him to vomit, *if that was the cause,* is only an inference. It may have been after he took the second visit to the hollow, or he may have obtained it elsewhere later. Strong suspicion is not sufficient on which to base a verdict of guilt. *State* v. *Chafin,* 78 W. Va. 140.

We recognize the well established principle that great weight is to be given to a verdict, and that it should not be disturbed unless it is plain that the evidence is insufficient. But where the evidence is of such a character that it does not beyond all reasonable doubt prove guilt as charged, the appellate court should not hesitate to award a new trial.

While the evidence taken as a whole creates a reasonably strong suspicion of defendant's guilt as charged, it does not establish his guilt beyond all reasonable doubt.

The judgment is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*