# CHARLESTON.

State *v.* Dan Walker

(No. 6766)

Submitted September 9, 1930. Decided September 16, 1930.

*Forrest A. Brown,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

Maxwell, Judge:

Defendant was indicted in Jefferson County for breaking and entering, and for entering without breaking, the dwelling house of another with intent to commit larceny. Upon conviction he was sentenced to serve five years in the state penitentiary.

The state's evidence shows that on the night of January 4, 1930, at about nine o'clock, Woodward Hill was awakened by a noise in the hall of his bungalow situated in Ranson, Jefferson County, not far from Charles Town. He called three times in an effort to ascertain who was there, and each time was answered by a man who said he was John Downey and wanted matches. Hill knew John Downey who lived in the neighborhood. Finally, Hill arose, put on part of his clothing, procured a revolver and opened his bedroom door. He found the de-

fendant in the hall, handed him a box of matches, and ordered him out of the house. Not until after defendant had stepped out of the house was he recognized by Hill. A search of the premises disclosed nothing missing.

Evidence further shows that an outside screen door had been unlatched, presumably by some one putting his hand through an old rent in the screen and unfastening the hook, and that the inside door had been unbolted by someone reaching through a broken glass panel. These doors led from the back porch directly into the hall. Both doors were open when Hill found defendant, but defendant made no move to escape from the time his presence was first discovered until he was ordered out. It appears that defendant had lived in close proximity to Hill for some months previous to January 1, 1930, when he had moved to Charles Town, and that on as many as three former occasions he had come to Hill's house for matches, always, however, in the daytime.

Defendant states that on the evening in question, he ate supper at his new place of abode in Charles Town, finished hanging some wallpaper, drank over a pint of blackberry wine and then about 8:30 started for the home at Ranson from which he had just moved. He denies any knowledge of how he got into Hill's house, but claims he discovered he was in the wrong house when he started feeling around the walls in the dark. He says that just then Hill called him, and that he answered that he was John Daniel, not John Downey. He claims that John Daniel Walker is his name, and that back at his home in Virginia he was called John Daniel. He further claims that he suffers mental lapses when drinking at which times he forgets where he is or what he is doing. He is corroborated in part in this by Dennis Link, a man for whom defendant formerly worked, and who says that Walker was at times peculiar and acted as though he should be at Weston (meaning the Weston Hospital for the Insane).

One other point in the evidence remains, and that is the testimony of Hill that on the night in question he had $1,300.00 in cash in a pocket of his clothing in his bedroom. To the admission of this evidence the defendant objected and made it the

subject of a special bill of exception. Defendant denied any knowledge of this money, and there is no evidence tending to show that he knew anything about the presence of the money in the house. Further reference will be made to this point.

The main point of error relied upon is that the evidence is insufficient to sustain a conviction because, it is said, intent on the part of defendant to commit larceny, as charged in the indictment, is not shown by the evidence. True, there is no direct evidence of intent, and in the very nature of things, it is a rare case in which direct evidence of such nature is available where there has been no larceny in fact. ''Intent, being a state of mind, is rarely susceptible of direct proof, but must ordinarily be inferred from the facts. The very fact of a man's breaking and entering a dwelling house in the nighttime is strong presumptive evidence that he did so with the intent to steal, and *a fortiori* evidence of an actual larceny is competent evidence as tending to prove an intent to steal; * * *.'' 4 Ruling Case Law, page 441. Many authorities are unequivocal that under a charge of burglary, the intent to commit larceny may be inferred from the breaking and entering. ''Even the very fact of breaking and entering in the nighttime raises a presumption that it is done with the intent of stealing.'' Archbold's Criminal Practice and Pleading, (8th Ed.) Vol. 2, page 1107. ''The intent may, and necessarily must in most cases, be inferred from the facts; as from the fact that a felony is actually committed or attempted, or from the fact that the entry is in the nighttime, but such facts raise only a presumption of intent, and are rebuttable.'' Clark's Criminal Law (3rd Ed.),page 302. Where one breaks and enters a dwelling house of another in the nighttime and is found therein, though he had in fact committed no larceny, it is for the jury to say from the circumstances of the case whether the defendant broke and entered with intent to commit larceny. The proposition is thus sensibly discussed in *People* v. *Soto*, 53 Cal. 415: ''But the intent with which he entered was a question of fact for the jury; and though there was no direct evidence of the intent, it might be inferred from the surrounding circumstances. The weight to be given to these was a question properly left to the

jury; and when a person enters a building through a window at a late hour of the night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, such being the usual intent under these circumstances.'' Of course, if the accused undertakes to make an explanation that is not satisfactory to the jury, the presumption of intent to commit larceny is not overcome by such attempted explanation. See case of *State* v. *Worthen,* (Iowa) 82 N. W. 910, where the question of intent in circumstances such as those at bar is discussed at length, and many cases cited. See also extended citations in 9 Corpus Juris, page 1080, note 58. The impulse of acquisitiveness is such a deep seated human characteristic that it will be presumed to be the motive of one who breaks and enters the dwelling house of another in the nighttime where no other reason satisfactorily appears. Any other rule would have the absurd result of making it extremely difficult, if not practically impossible, to convict a burglar of his high crime, though caught in another's home, into which he had broken in the nighttime, if forsooth, at the time he was discovered therein he had not yet appropriated any of the householder's belongings.

In the light of the undoubted rule that under a charge of entering a dwelling house in the nighttime with intent to commit larceny the intent may be inferred from the breaking and entering, where a satisfactory excuse negativing such intent does not appear, we think that the above mentioned testimony of Hill with reference to his having $1,300.00 in cash in his home that night is immaterial, and that the admission of that testimony in evidence did not constitute prejudicial error. It becomes unimportant and inconsequential, inasmuch as the intent to steal could be properly inferred by the jury from the breaking and entering and attendant circumstances without regard to whether the evidence with reference to the money was admitted or not.

It is not surprising that defendant's attempted explanation as to why be broke and entered the dwelling house of Woodward Hill in the nighttime did not carry convincing weight with the jury. One may not do such a serious thing as to break

into another's domicile in the nighttime and expect to have a frivolous excuse accepted as a satisfactory explanation for such conduct. Maybe the writer of this opinion, had he been on the jury, would have felt that the defendant should not be convicted under this evidence of the grave crime of burglary because he was a weakminded negro, possibly under the influence of liquor, and probably scarcely realized what he was doing; but the jury in the last analysis did not take that view, although, as disclosed by the record, they were at first not disposed to convict, at least, in so far as intent to commit larceny was concerned. It appears from the record that after having deliberated for a time, the jury came into court and stated to the court through their foreman that they were willing that the defendant "be convicted upon breaking and entering the house, but the balance of the indictment, they cannot agree on intent to steal." Thereupon, upon a proper instruction from the court that the jury could not convict the defendant of breaking and entering as a separate offense, and that if they had a reasonable doubt as to defendant's intent to steal, they could not convict him under the indictment, the jury retired to their chamber for further deliberation. Later they returned a verdict of guilty as charged in the indictment, with recommendation of the mercy of the court.

Defendant's testimony that his true name is John Daniel Walker, that he was usually known by the name of John Daniel at his old home in Virginia, and that when called upon to give his name when his presence was discovered in the Hill home, he gave the name of John Daniel which was mistakenly understood by Hill and his wife as John Downey, does not harmonize with the undisputed testimony that when he was arraigned for this offense before a magistrate on a preliminary hearing, he said his name was John Estes Walker.

Finding no prejudicial error in the record we affirm the judgment.

*Affirmed.*