STATE OF WEST VIRGINIA

*v.*

V. L. WRIGHT

(No. 9907)

Submitted April 15, 1947.   Decided June 24, 1947.

*Ajax T. Smith* and *Burton, Sanders & Shaffer,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

RILEY, JUDGE:

The defendant, V. L. Wright, was indicted, convicted and sentenced to confinement in the penitentiary for a term of not less than five nor more than ten years, in the Criminal Court of Raleigh County, for the crime of incest upon his daughter, Iris Wright, fifteen years of age. Application to the Circuit Court of Raleigh County for a writ of error and supersedeas was refused with the notation that the judgment of the criminal court was plainly right. To the judgment of the circuit court this writ of error is prosecuted.

Iris Wright testified that she was fifteen years old on October 2, 1945. According to her testimony, defendant had sexual intercourse with her for the first time at Elverton in Fayette County in the year 1943, when she was about thirteen years of age; that he continued to have intercourse with her in Fayette County, West Virginia, for several months, when she and defendant went to McDowell County, where intercourse continued; and that from McDowell County, they went to Mercer County, where sexual relations were continued, and finally they moved to Francis, a short distance from Rhodell (both in Raleigh County). The last act of sexual intercourse, upon which the State relies for conviction, was consummated during the latter part of July, 1945, in the two-room shack in Francis, then occupied by defendant and his daughter. It appears that special officer, Everett Shutt, was caused, through a letter from Susie Wright, sister-in-law of defendant, to make an investigation regarding defendant's

relations with his daughter, and that as a result of such investigation said officer went before Cole, a justice of the peace in Rhodell, and, upon his own affidavit, secured a warrant based upon the charge of statutory rape, for the arrest of defendant. When Shutt, together with another officer, attempted to make the arrest, at the place where the alleged act of intercourse had taken place, defendant escaped, going to Mercer County where his father lived. He was arrested a day or two later and returned to Raleigh County. Both the warrant and the letter referred to above were introduced in evidence.

Various witnesses testified on behalf of the State as to suspicious circumstances tending to show that defendant engaged in illicit relations with his daughter. The prosecutrix testified that defendant was wont on some occasions to fondle her, and in this she is also corroborated.

Susie Wright, heretofore mentioned, the wife of one Claude Wright, defendant's brother, stated that in their home in Mercer County prosecutrix and defendant slept in the same room which contained only one bed, though places had been prepared for them to sleep in separate quarters. However, her husband, Claude Wright, contradicted this testimony.

Defendant denied all improper relations with his daughter Iris, and testified that the accusation grew out of his efforts to discipline her and stop her from keeping late hours and undesirable company. Leo Wright, defendant's eighteen-year-old son, testified that he lived with his father and sister Iris during much of the time during which Iris claims she was having illicit relations with her father, and that he had observed no improper conduct on the part of defendant toward prosecutrix. This witness and defendant's sister, Maude Rierson, both testified to the effect that they had spent the night on which the last act of sexual intercourse is alleged to have taken place, in the two-room shack at Francis and that on that night Leo Wright and his father slept together, and Maude Rierson and prosecutrix slept together, and, further, that no act

of intercourse occurred between defendant and his daughter at that time.

A number of witnesses testified that prosecutrix had a bad reputation for veracity; that she engaged in profane language toward her father; and that she made threats against him and assaults upon him. Several witnesses testified that she was wont to keep late hours and undesirable company, and one witness testified, over objection, that after defendant was arrested prosecutrix ceased to do so.

Mrs. Wood, of Kay Moor, who ran a boarding house at which defendant and his daughter stayed for about a month in 1944, occupying the same room which had two beds, was permitted on rebuttal, over objection, to state why she ordered defendant to leave her house. She testified that one of the beds would be wet and that "the doors were locked. I couldn't see what bed was occupied by her or which was his * * * I would not have any beds like that, I was suspicious, but still did not see anything and I know nothing."

Susie Wright was permitted to state, over objection, that when her husband saw that she was summoned to appear as a witness he said, "Oh, yes, you are summon for the state"; that her husband said he was going to burn the summons, and did so, and then began to beat her. Witness said her husband inquired, "Who are you going to swear for — you are going to swear for us," and that witness replied, "I am going to swear the truth."

On rebuttal several witnesses testified that while prosecutrix was staying at Rhodell in Raleigh County, she had a good reputation for chastity. On cross-examination the prosecution elicited from defendant the fact that his children had been taken from him by the public assistance authorities of Mercer County, because of his failure to support them.

The introduction of the warrant and the letter are claimed as error. It is claimed that the introduction of

the warrant was unnecessary and therefore prejudicial. Of course the warrant was unnecessary, but we do not think defendant was prejudiced in any manner thereby. The warrant was based on the same facts upon which defendant was indicted and tried. If the facts in this case as to the alleged happenings at Francis are true, and the prosecutrix being, as the evidence discloses, under the age of consent, defendant had by the same act committed both incest and rape; nor do we think that the introduction of the letter was reversible error.

While the testimony of Mrs. Wood is clearly irrelevant to the issue, the objectionable part as to "suspicions," upon objection was stricken. Likewise there is no error in Susie Wright's testimony, heretofore referred to by defendant.

As to the testimony bearing on defendant's failure to care for his children, it is contended that such failure of a parent, without lawful excuse, to support his children is a crime. But such testimony is admissible in rebuttal of defendant's testimony in chief that he was solicitous as to prosecutrix' conduct.

And, finally, defendant assigns error to the giving of certain instructions for the State and the refusal of certain of defendant's instructions.

State's instruction No. 1 told the jury that they may convict defendant on the evidence of the prosecuting witness "if they believe from such evidence and the corroborating facts and circumstances in the case, if such facts and circumstances appear, that the defendant is guilty beyond a reasonable doubt, although the defendant has testified in direct contradiction to the testimony of the prosecutrix, Iris Wright." It is contended that this instruction might cause the jury to believe that the court had in mind that the prosecuting witness was not directly contradicted by any witness other than defendant. However, since the testimony of Maude Rierson and Leo Wright concerning the happenings in the shack at Francis

clearly corroborates defendant, we are of opinion that the jury was not misled by the instruction.

Error is assigned to the giving of State's instruction No. 2, which told the jury that they might take into consideration the flight of defendant from the arresting officers after the commission of the alleged crime, if the same is proved, along with other facts and circumstances introduced in evidence. Conduct on the part of an accused tending to show a consciousness of guilt is usually admissible against him. The instruction was properly given. *Jenkins* v. *Commonwealth,* 132 Va. 692, 111 S. E. 101, 25 A. L. R. 882; *Chandler* v. *Commonwealth,* 135 Va. 486, 115 S. E. 703; *Duty* v. *Commonwealth,* 137 Va. 759, 119 S. E. 62; 2 Wharton's Criminal Evidence, 10th Ed., 1494; Underhill's Criminal Evidence, 4th Ed., 471.

State's instruction No. 3 tells the jury, in effect, that it is not required to disbelieve a witness because such witness' general reputation for truth and veracity in the neighborhood where he resides has been proved to be bad, *"and said witness shown not to be entitled to credit when on oath."* (Italics supplied). It is contended that the italicized language contained in the instruction is particularly applicable to the testimony of the prosecutrix, the only witness whose general reputation for veracity was attacked, and upon whose testimony the State's case depends. This instruction, however, does not expressly mention the name of Iris Wright, and, in our opinion, is not apt to prejudice defendant.

State's instruction No. 4, objected to by defendant, was adopted from the opinion of the Court in *Chahoon* v. *Commonwealth,* 20 Gratt. 742, 797. The instruction simply tells the jury that defendant's failure to produce evidence in addition to that in the record may be considered by the jury in connection with the other facts in the case, and the instruction specifically tells the jury that they must not presume or assume the guilt of defendant by reason of his failure or neglect to produce evidence in his own behalf. This instruction, in our opinion, does not violate the

rule in criminal cases that the burden of proving defendant's guilt beyond a reasonable doubt rests upon the State throughout the entire trial, and never shifts to defendant.

Defendant objects to the refusal of the trial court to give defendant's instruction No. 8, which would have told the jury that if they believed from the evidence in this case that prosecutrix delayed for nearly three years to make known the alleged offense and has not satisfactorily explained the cause of such delay, then such delay may be taken into consideration by the jury in favor of defendant; and *State* v. *Golden*, 90 W. Va. 496, 111 S. E. 320, is cited in support of the giving of this instruction. The *Golden* case was a rape case, in which the consent of a prosecutrix who had reached the age of consent as the statute then provided (Barnes' West Virginia Code, Handy Edition, 1916, Chapter 144, Section 15), is the controlling element in the case. In the instant case it is immaterial whether prosecutrix consented to the illicit act. The blood relationship between the parties renders defendant's act in having sexual intercourse with his daughter incestuous and criminal.

We have considered the action of the trial court in giving the State's instructions and its refusal of defendant's instructions in those matters which seem worthy of note, and find no prejudicial error in regard thereto. A further discussion of the instructions will serve no useful purpose.

We are of opinion that the record contains no prejudicial error, and therefore the judgment of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*