STATE OF WEST VIRGINIA

*v.*

EULAH MAYLE

(No. 10415)

Submitted January 22, 1952. Decided February 26, 1952.

RILEY, PRESIDENT and LOVINS JUDGE, dissenting.

*I. Raymond Murphy,* for plaintiff in error.

*William C. Marland,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for defendant in error.

GIVEN, JUDGE:

Defendant, Eulah Mayle, was indicted by a grand jury in the Circuit Court of Barbour County for forging and uttering a check in the amount of twenty-five dollars. The indictment contained two counts, the first charging the forging of the check and the second charging the uttering thereof. Defendant was found guilty by a jury on the charge contained in the second count and was sentenced to the penitentiary for a term of not less than two nor more than ten years.

The check, dated November 4, 1950, drawn on the First National Bank in Philippi, was purportedly signed by "H. Poling", as maker and was payable to the order of "Howard Ross". On the face thereof it was indicated that the check was given for "labor", and the name "Howard Ross" was endorsed on the back thereof. Herman J. Poling, an attorney of Philippi, had an account at the First National Bank in Philippi. Howard Poling also had an account at that bank, but the purported maker of the check was described by defendant as an attorney and was the only person so identified in the evidence.

Contentions of defendant are: (1) The evidence was not sufficient to have warranted the jury finding, beyond a reasonable doubt, that the defendant, at the time of cashing the check, had knowledge that it was a forged instrument; (2) certain evidence relating to an escape from jail by defendant, after his arrest and incarceration upon the charge for which he was indicted, was inadmissible as tending to prove a different crime. To answer these contentions we must necessarily consider all the evidence relating thereto.

On November 4, 1950, a Saturday, at about seven or eight o'clock in the evening, the defendant and William Johnson, Jr. arrived at the front of Shaffer's store in Philippi, either together or about the same time. Johnson

there handed the check in question to defendant and requested him to have it cashed, giving as his reason that "he had to come to the court room over here". The name "Howard Ross" had previously been endorsed on the back of the check. Defendant immediately went into the Shaffer store, called for Henry Kelley, an employee of the store, and requested that Kelley cash the check. Kelley testified to the effect that the defendant stated that the check "was Herman's name, Herman Poling"; that defendant stated "he had been husking corn for Herman Poling on his farm and it was for labor"; and that "it was the lawyer, and said 'you know Herman Poling, don't you?' ". Kelley also testified that defendant said "his name was Ross", and that he knew defendant's face but did not know his name. Kelley then cashed the check and defendant, according to his own testimony, waited near the front of the store until Johnson returned from the court house, whereupon defendant delivered to Johnson the twenty-five dollars received by him from Kelley for the check.

The check was presented to the bank upon which it was drawn and payment thereof refused, for the reason that the bank had no account in the name of "H. Poling". Herman J. Poling testified to the effect that his bank account was in the name of H. J. Poling; that he did not sign the check; that he authorized no person to sign his name to the check; that he never issued any check to Howard Ross, and that neither defendant nor Howard Ross did any work for him. William Johnson, Jr., who entered a plea of guilty to an indictment charging him with having forged the check, testified to the effect that he wrote the check; that he knew H. Poling; that he had no authority from H. Poling to write the check; that after he wrote the check he gave it to defendant; that he, Johnson, signed the name "Howard Ross" on the back of the check; that defendant was not present when he wrote the check, and that he did not tell defendant that the check was forged. Defendant denies that he made any representation to Kelley to the effect that his name

was Ross, that he had personally worked for Herman J. Poling, or that H. Poling was an attorney, and denies any intention to obtain money on a forged check.

Upon the trial the State introduced evidence showing the arrest of defendant under a warrant issued by a justice of the peace, in connection with the offense charged in the indictment; that at the preliminary hearing defendant was held to answer an indictment and, in failure of bail, was placed in jail on November 16, 1950; and that on November 30, 1950, he escaped jail. There was an objection and exception to the introduction of the warrant. The admission thereof, however, was not prejudicial error. See *State* v. *Wright,* 130 W. Va. 336, 43 S. E. 2d 295. No objection was made to the introduction of the other evidence given by different witnesses relating to the escape. Neither was there any motion made by the defendant to limit consideration of such evidence to any specific purpose.

We think the evidence detailed clearly establishes that the check was a forged instrument. Johnson testified that he forged it and plead guilty to the charge of having forged it. Herman J. Poling, upon whom the check was supposedly drawn, testified that he did not sign the check and that he authorized no person to sign his name thereto. Payment thereof was refused by the bank upon which it was drawn, and that bank had no account in the name of H. Poling. Even though the name of the maker is fictitious, the check is nonetheless a forgery. 37 C. J. S., Forgery, Section 10.

It is, of course, not sufficient to sustain the conviction of defendant of having uttered the check, to establish that the check was a forged instrument. To be guilty of the crime of uttering he must have had knowledge of the fact that it was a forged instrument, at the time of utterance. *State* v. *Perry,* 101 W. Va. 123, 132 S. E. 368; *State* v. *Viquesney,* 103 W. Va. 392, 137 S. E. 538; *State* v. *Campbell,* 112 W. Va. 355, 164 S. E. 301. As has often been pointed out, however, intention or knowledge must be determined

from actions or statements of the defendant, or be inferred from facts shown to be within his knowledge. "The intent to commit crime may be implied from established facts." 22 C. J. S., Criminal Law, Section 33; *State v. Sotak*, 100 W. Va. 652, 131 S. E. 706, 46 A. L. R. 1523; *State v. Walker*, 109 W. Va. 351, 154 S. E. 866; 6 M. J., Criminal Procedure, Section 6.

Upon what testimony which the jury had the right to believe to be true, beyond any reasonable doubt, could the jury have determined that the defendant had knowledge of the forged character of the check at the time he obtained cash therefor? He represented to Kelley that he was "Howard Ross". Kelley knew defendant's face but not his name. Was not the jury fully justified in believing, in fact, required to believe, that defendant would have known his own name? Herman J. Poling testified that defendant did no work for him, although defendant represented to Kelley that he had husked corn for Herman Poling and that the check was for that work. Would not the jury have had to believe that if the defendant had performed any labor for Herman J. Poling on his farm, he would have known it? Defendant also falsely represented unto Kelley that the check was given by Herman Poling, an attorney. Within a short time after defendant was placed in jail upon a warrant charging him with having uttered the check, he escaped from jail. It is well established in this jurisdiction that an escape from custody, in cases of like circumstances, may be considered as showing guilty conscience. See cases cited *infra*.

The jury could also consider the proved circumstances in connection with the cashing of the check. Defendant and Johnson appeared, either together or about the same time, in front of Shaffer's store, wherein the check was cashed. The only attempted explanation as to why defendant, instead of Johnson, undertook to obtain cash for the check, was that Johnson, the forger of the check, had to go to the court room at about seven or eight o'clock on

a Saturday evening. Defendant and Johnson were long time acquaintances, and defendant was aware that Kelley, who cashed the check, was only slightly acquainted with him. We have not overlooked certain evidence tending to show that defendant had no knowledge of the forged character of the check. We have only attempted to point out the particular facts testified to which the jury could have believed, beyond reasonable doubt, from which knowledge of the defendant of the forged character of the check could be inferred. We conclude that the jury had before it sufficient facts from which it could infer such knowledge. "If in such case, the question depends upon the weight of testimony, or inferences and deductions from facts proven, the jury and not the court, are exclusively and uncontrollably the judges." Point 3, syllabus, *State* v. *Cooper,* 26 W. Va. 338; *State* v. *Lawson,* 125 W. Va. 1, 22 S. E. 2d 643; *State* v. *Sotak, supra.* In *State* v. *Dryden,* 3 Boyce (Del.) 466, 84 A. 1037, it is held: "'Knowledge,' as used in the law of perjury, with reference to the making of a false statement under oath with knowledge of its falsity, is an intangible thing resting in the mind, the possession of which may be admitted by the party, or be shown by proof of circumstances from which it may reasonably be inferred."

The conviction of defendant was not wholly upon circumstantial evidence. Each of the necessary elements of the offense of uttering a forged instrument was clearly established by direct proof, except knowledge upon the part of the defendant that the check was a forged instrument, and the facts from which the jury inferred knowledge were proved not by circumstances, but by direct proof. The only question here is whether the facts believed by the jury to be true are sufficient to warrant the conclusion of the jury that defendant knew, at the time he cashed the check, that it was a forged instrument. The argument is made that the false representations made by defendant to Kelley could have been made for some purpose other than to deceive Kelley as to the forged character of the check. We think that possible. The ques-

tion here, however, is not whether some other purpose possibly existed, but whether the facts established sufficiently warrant the inference of such knowledge. Between the line of reasonable doubt and the absolute, if there be an absolute, lies a broad field of possibilities, suspicions or guesses. The applicable rule of law requires only that conviction of the crime be established beyond a reasonable doubt, not beyond every possible doubt.

Defendant contends that the evidence detailed above, as it relates to the escape of defendant from jail, was not admissible, for the reason that it tended to charge him with the commission of a different offense, one that would have had no tendency to establish motive, criminal intent, or a uniform course of action, as to the offense for which he was being tried. The State contends that the evidence was admissible for the purpose of establishing guilty conscience of the defendant as to the offense for which he was being tried. We think it well established in this jurisdiction, and generally, that evidence of an escape by a defendant from custody, in the circumstances detailed, is admissible for the purpose of establishing guilty conscience or knowledge. *State* v. *Koontz,* 31 W. Va. 127, 5 S. E. 328. "Evidence of the escape and flight of a person charged with a crime, from jail or the custody of an officer, or of his attempt to escape is competent, in connection with other facts and circumstances, on the question of his guilt, notwithstanding it has only slight tendency to prove guilt. * * *." 20 Am. Jur., Evidence, Section 298; 1 Wharton's Criminal Evidence (7th ed.), Section 307. Moreover, there being no objection to the evidence, any error in the admission thereof is deemed to have been waived. *State* v. *Files,* 125 W. Va. 243, 24 S. E. 2d 233.

Finding no prejudicial error, the judgment of the circuit court is affirmed.

*Affirmed.*

RILEY, PRESIDENT, dissenting:

With all deference I am constrained to dissent from

the opinion of the Court, in so far as that opinion bears upon the proof of the defendant's guilty knowledge that the check in question was, in fact, forged at the time defendant uttered it. In all other respects I agree with the holding of the Court as set forth in the opinion.

Code, 61-4-5, provides, in part, that: "If any person * * * utter or attempt to employ as true such forged writing [other than those mentioned in Code, 61-4-1, and Code, 61-4-3], knowing it to be forged, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than two nor more than ten years." Thus it may be seen that three elements enter into the crime of forging and uttering the paper writings embraced therein: (1) The writing must be, in fact, forged; (2) the accused must utter or attempt to employ as valid the forged writing; and (3) the accused must know it to be forged at the time the writing is uttered. *State* v. *Viquesney,* 103 W. Va. 392, 393, 137 S. E. 538.

From the evidence that the defendant at the time the check was uttered represented to Kelley, who knew the defendant's face but not his name, that he was "Howard Ross", that he falsely represented that he had husked corn for Herman Poling and that the check was for that work, and that Herman Poling was an attorney, it is reasoned in the opinion of the Court that the defendant had knowledge of the forged character of the check at the time he obtained the cash thereon. This, in my opinion, is a *non sequitur,* because the defendant may have made those representations because he thought that the check was drawn on a bank in which Herman Poling, whose full name is "Herman J. Poling", did not have an account. Of course, these are strong and suspicious circumstances, which would tend to indicate that the defendant knew that the check was forged at the time of its utterance, which the jury would be entitled to consider in the determination of whether defendant was guilty or innocent. The very passing or uttering of a check alleged to be forged is a strong circumstance to be considered as tend-

ing to show that the utterance of the check was made with intent to defraud. *State* v. *Austin,* 93 W. Va. 704, 715, 117 S. E. 607. Likewise in the same case at page 715 of the opinion, this Court held that the jury may consider, in determining the guilt of a defendant, who is charged with the uttering of a forged instrument, the fact that the defendant at the time the instrument was uttered, represented himself to be the person named as payee therein. But these are only circumstances to be considered, and do not of themselves, in my opinion, establish defendant's guilt beyond a reasonable doubt. In this jurisdiction in every criminal case, the defendant's guilt must be established beyond a reasonable doubt. *State* v. *Scurlock,* 99 W. Va. 629, pt. 1 syl., 130 S. E. 263; Niblack, Underhill's Criminal Evidence, 4th ed., Section 51. "The general rule stated broadly, as laid down by the cases, is that the burden of proof and the obligation to convince the jury of the prisoner's guilt beyond a reasonable doubt as to all facts and circumstances essential to the guilt of the accused, including the criminal intent, are upon the prosecution throughout the trial." And this burden, as distinguished from the burden of evidence, the latter of which may during the course of the trial shift with frequency, never shifts. *Id.,* Section 50.

In order to establish the defendant's guilt beyond a reasonable doubt under the rule prevailing in this jurisdiction, it is necessary that the evidence be such as to establish the guilt of a defendant in a criminal prosecution by proof resulting in the actual exclusion of every reasonable hypothesis of innocence. 5 M. J., Criminal Procedure, Section 62, and cases cited under notes 13 and 14; *State* v. *Mininni,* 101 W. Va. 611, pt. 1 syl., 133 S. E. 320.

The representations which the defendant made to Kelley, though they are without explanation, under the rule in *State* v. *Austin, supra,* amount only to suspicious circumstances and did not establish beyond a reasonable doubt defendant's guilty knowledge of the forged character of the check, which he uttered. And, therefore, the

evidence thereof does not exclude the hypothesis that the representations may have been made because defendant, having doubt as to the worth of the check, may have thought them necessary in order to obtain the cash thereon.

Again it must be said that this Court should not on evidence creating mere suspicion, no matter how strong, take away the protection which the well established rules governing criminal procedure in this State have through the course of years wrapped around every citizen accused of crime.

I am authorized to say that Judge Lovins concurs in this dissent.